**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Unisys Corporation, | Civil Action No. _____ |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| vs. | |
| Leon Gilbert and Michael McGarvey, | |
| Defendants. | |

## COMPLAINT

1.      Plaintiff Unisys Corporation ("Unisys") alleges as follows against Defendants Leon Gilbert ("Gilbert") and Michael McGarvey ("McGarvey") (together, "Defendants") based on information currently available to Unisys.

## INTRODUCTION

2.      This case involves Unisys' substantial investment, through years of hard work and hundreds of millions of dollars, in industry-leading innovations in Digital Workplace Solutions ("DWS"), and a theft that, if left unchecked, threatens to fundamentally undermine that investment. In a plot orchestrated with Atos SE ("Atos"), Defendants have misappropriated and threatened to continue to misappropriate Unisys' valuable trade secrets related to DWS for the benefit of themselves and Atos.  Defendants abruptly announced that they were leaving Unisys to work at competitor Atos during the second week of January 2023.  But shortly before filing this suit, Unisys discovered that Defendants were not merely changing jobs.  Rather, they were leaving Unisys to work in comparable roles at Atos, whose DWS business had been struggling, and taking Unisys' valuable trade secrets with them.  Gilbert decided to leave Unisys at the behest of Atos's CEO Nourdine Bihmane and assured another senior Atos executive (Hansjorg Walz) that he would be using Unisys' confidential information to effectuate Atos' desired turn around while at Atos.

Specifically, on January 19, 2023, Gilbert told that senior Atos executive that he "spent last 2 years [at Unisys] in the model Atos is trying to get to, so know[s] what works and doesn't. Have to now show Nourdine the same." In response, Atos' Senior Vice President Hansjorg Walz responded "indeed." *See* Exhibit 18. For his part, McGarvey downloaded approximately 13,000 confidential Unisys documents to his personal laptop shortly before announcing his departure from Unisys, then denied doing so at his exit interview, and now has refused even to acknowledge Unisys' requests that he turn in that personal laptop to Unisys for inspection. Unisys was thus forced to file this case to put a halt to Defendants' misappropriation and stanch the irreparable harm that has already occurred and will continue to occur if Defendants are permitted to continue to illegally use Unisys' trade secrets in a competing business.

3.      Defendants' misappropriation fundamentally violates the trust Unisys placed in them as high-ranking Unisys employees. Unisys undertakes substantial measures to ensure that its highly confidential information remains secret and is not misused, including by restricting access to only certain employees who need such information and through numerous other measures. Unisys requires employees, including Defendants, to acknowledge their understanding of the confidentiality requirements through agreements and company policy, which Unisys expressly incorporates by reference. *See* Exhibits 1, 2.

4.      Unisys' DWS business delivers advanced workplace solutions to help clients transform their digital workplaces and create exceptional end-user experiences by providing the tools, solutions and services that enable a company's workforce to work securely from anywhere, anytime on any device. Unisys set out to transform its DWS business unit in 2020 to differentiate Unisys in the market place. To do so, Unisys spent hundreds of millions of dollars acquiring companies that provided critical technologies for DWS and investing in its own proprietary

technologies.  The result was a transformation of Unisys' DWS platform from a reactive services structure to a proactive experience that provides insight into how to increase productivity gains in a client's associate base.  As part of that investment, Unisys hired Gilbert, McGarvey, and others at the beginning of 2021 to lead Unisys' DWS business unit during this transformation, with the full support and investment of the company.

5.     Throughout their time at Unisys, Gilbert and McGarvey worked side-by-side to run the DWS business unit.  Unisys entrusted Gilbert and McGarvey—who signed agreements related to the confidential nature of their work—with Unisys' confidential information concerning highly sensitive and proprietary technologies, products and services, and related business matters.  They were privy to Unisys' proprietary technical documents, design ideas, business strategies, customer lists and strategies, pricing, product planning, cost management, design guidelines, and research and development ("R&D") efforts while employed at Unisys.  Gilbert and McGarvey had access to Unisys confidential documents stored on the company's internal DWS SharePoint sites, which are internal data share sites used by employees to share documents and other information amongst themselves.  Gilbert and McGarvey were also intimately involved in confidential work developing and implementing the strategy for the DWS business unit itself.  They were also involved in confidential discussions at the highest executive level, including those related to Unisys' confidential company-wide strategies.

6.     Despite the significant company resources dedicated to Defendants' DWS work for Unisys over the years, in early January 2023, Gilbert and McGarvey announced to Unisys that they were leaving the company to work for Atos in its competing DWS business.  But as Unisys later discovered, they were not leaving empty-handed.  Rather, together they were leaving with thousands of confidential Unisys documents that disclose critical business strategies and

3

technologies and a plan to use Unisys' trade secrets in their work for Atos, which was trying to revamp its failing DWS business.

7.     Like Unisys, Atos offers DWS solutions, and Unisys and Atos often compete to serve the same customers.  However, Atos differed from Unisys in its commitment to R&D for its DWS business.  In or around 2020, Atos decided to focus its growth efforts in areas other than DWS.  Then in 2021, its revenues dropped, which Atos blamed, in part, on its DWS business.  At the beginning of 2022, Atos issued a profit warning, and declared that its DWS business would need substantial changes.

8.     Around October/November 2022, the wheels were put in motion for Gilbert to rejoin Atos and take a team from Unisys with him.  On November 1, 2022, Gilbert forwarded confidential Unisys communications with one of its customers to an Atos employee.  Then on December 26, 2022, Gilbert drafted an email to an Atos human resources employee that identified McGarvey and two other Unisys employees that Gilbert wanted to take with him to Atos, along with their confidential Unisys compensation information and the value that he said they would add to Atos.  For example, Gilbert stated that one of those Unisys employees would almost guarantee a long-term renewal of a particular customer contract with Atos.

9.     During the same time frame, in late October and November 2022, McGarvey visited Atos SharePoint sites and Atos employee rewards sites, both of which require log-in information to access.  And, after being chosen by Gilbert to go to Atos with him but before telling Unisys, McGarvey downloaded 13,000 confidential documents from a confidential DWS SharePoint site to his personal laptop between January 4–5, 2023.  Based on McGarvey's web browsing history, Unisys believes that McGarvey signed an agreement with Atos on January 5. Soon after, in the week of January 9, 2023, Gilbert and McGarvey officially announced their

departures.  And on January 10, 2023, McGarvey signed a performance and share agreement with Atos.

10.    Gilbert specifically discussed the plan for him to use Unisys' trade secrets with Atos Senior Vice President Hansjorg Walz on January 19, 2023 through Microsoft Teams messages.  During this conversation, as discussed above, Gilbert outlined his vision for the DWS division at Atos.  Specifically, he stated that he "spent last 2 years in the model Atos is trying to get to, so [he] know[s] what works and doesn't.  Have to now show Nourdine the same." *See* Exhibit 18.  During this period, Gilbert deleted many emails and wiped his Chrome browser history.  And on January 22, 2023, Gilbert accessed his Google Drive, a non-Unisys file-storage service, at least twenty times over a twenty-five-minute period from his Unisys work computer.

11.    During their exit interviews, Gilbert and McGarvey told coordinated stories, blaming Unisys leadership for their departures and claiming that Unisys had failed to acquire any companies for them—which was untrue, given that Unisys purchased *two* companies for its DWS business while it was helmed by Gilbert and McGarvey.  Defendants also indicated that they were unhappy with their compensation at Unisys, and indicated that taking a position at Atos would be far more lucrative.  McGarvey also denied downloading Unisys confidential documents to his personal laptop multiple times during his exit interview and claimed there was nothing from Unisys he would want.

12.    Defendants' communication of confidential information to Atos employees and stated intent to continue to do so while at Atos, coordinated departures, improper solicitation of at least one Unisys employee, and downloading of Unisys confidential documents to a personal laptop prior to leaving demonstrates concerted activity to steal and use Unisys' trade secrets at Atos.  Unisys files this lawsuit and seeks immediate injunctive relief to stanch the irreparable harm

that has and will continue to occur from Defendants' use of Unisys' trade secrets in their employment at Atos.

## THE PARTIES

13.     Unisys is a Delaware corporation that maintains its corporate headquarters and principal place of business at 801 Lakeview Drive, Blue Bell, Pennsylvania 19422.

14.     Gilbert is an adult individual who, upon information and belief, resides in Prospect, Kentucky.  During his employment with Unisys, Gilbert was a Senior Vice President and General Manager for DWS and a member of the Unisys Executive Leadership Team.

15.     McGarvey is an adult individual who, upon information and belief, resides in South Abington, Pennsylvania.  During his employment with Unisys, McGarvey was Vice President of Solution Management, DWS.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 because this action arises out of the violation of a federal law, the Defend Trade Secrets Act, 18 U.S.C. §§ 1831, *et seq*.

17.     This Court also has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367(a) because the federal and state law claims derive from a common nucleus of operative facts.

18.     This Court has personal jurisdiction over Gilbert.   Gilbert's compensation agreements with Unisys expressly provide that Gilbert submits to and consents to the exclusive jurisdiction of this Court.  *See* Exhibits 3–4 §§ 20–21; Exhibits 5–6 §§ 21–22; Exhibits 7–10 §§ 20–21.

6

19.     This Court has personal jurisdiction over McGarvey.  McGarvey's compensation agreements with Unisys expressly provide that McGarvey submits to and consents to the exclusive jurisdiction of this Court.  *See* Exhibits 11–13 §§ 20–21.

20.     Additionally, this Court has personal jurisdiction over McGarvey because he resides in South Abington, Pennsylvania.

21.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants contractually agreed to submit themselves to venue in this Court in the event of any legal dispute between Unisys and each of them in their respective compensation agreements.  *See* Exhibits 3–4 §§ 20–21; Exhibits 5–6 §§ 21–22; Exhibits 7–10 §§ 20–21.

22.     Based on Defendants' conduct, it was wholly foreseeable that they would be bound by the compensation agreements' jurisdiction and venue provisions and subject to a suit in the Eastern District of Pennsylvania.

<u>**ADDITIONAL FACTUAL ALLEGATIONS**</u>

A.     **Unisys' Trade Secrets Are Critical to Its Business and Success**

23.     Headquartered in Blue Bell, Pennsylvania, Unisys is a global technology solutions company.  Unisys' offerings include digital workplace solutions, cloud and infrastructure solutions, enterprise computing solutions and business process solutions, and its customers include many Fortune 500 companies.  Its reliable and high-quality solutions are the result of significant investment of time and resources, and Unisys invests heavily to support its engineering and business teams' creation of industry leading technologies and related products and services.  Unisys relies on its trade secrets to guard the intellectual property created by its investment in the ingenuity and industry of its employees.

24.     As a result of substantial investments and years of innovation, significant aspects of Unisys' offerings are highly confidential and maintained in strict confidence as trade secrets to protect the substantial investment made to develop them.  This confidential information derives considerable value from not being publicly known outside of Unisys, because of the competitive advantage, among other things, that the secret nature of the information confers on Unisys from both a technological and business perspective.

25.     Unisys' DWS business unit allows customers to provide their workforce with the tools, solutions and services that their employees need to work securely and effectively.  As part of that product offering, Unisys empowers the hybrid workplace and workforce by designing smarter, innovative workspaces that create seamless, digital experiences securely.

26.     Unisys has developed proprietary digital workplace solutions which provide proactive, personalized technology and support services to elevate a customer's digital workplace experience without compromising compliance or security.  Unisys has invested a tremendous amount of time and resources into its research and development of its solutions and has created many confidential documents reflecting the research and development process and results.  These documents contain, as an example, architecture designs (including integration information), configurations and technical specifications for customers, presentations, and training tools.

27.     Further, Unisys has invested significant resources into its confidential and proprietary business strategy information.  For instance, Unisys has accumulated years of proprietary strategies that are critical to the company's success in the marketplace and future plans. This includes, for example, confidential documents regarding Unisys' cost and pricing strategy, investments, partnerships, product roadmaps and projections, goals and plans for revenue growth and market power, product development, potential acquisition plans, workforce plans, and sales

positioning information.  Such confidential information represents Unisys' years of experience and associated investment.

28.     The thousands of Unisys proprietary documents that McGarvey downloaded to his personal laptop contain Unisys' confidential trade secrets.   The confidential and proprietary documents that McGarvey unlawfully acquired include:

- Unisys business strategies that cover plans for growth, product optimization, and improved market recognition over the course of several years for Unisys' DWS, Cloud Applications & Infrastructure ("CA&I") and Enterprise Computing Solutions ("ECS") business segments;

- architecture design for building Unisys' communications platform as well as internal presentations that discuss the same;

- client contracts with confidential pricing information, statement of works, client workshops and oral presentations, and information related to current pursuits;

- roadmaps and technical specifications related to a proprietary employee-related program; and

- presentations, training tools, architecture designs, and sales positioning information for Unisys products.

29.     These exemplary confidential materials that McGarvey unlawfully downloaded to his personal laptop are the result of many years accumulation of Unisys' technology development and business acumen, are kept strictly confidential by Unisys, and are critical to Unisys' success in the marketplace, including as a result of its secret and proprietary nature.  Unisys' efforts and investments to develop this information and technology over the years has resulted in substantial trade secrets that, together with other Unisys intellectual property, have made Unisys a market leader.  For these reasons and others, Unisys' digital workplace technologies and the secret design, testing, and implementation of its proprietary features and processes are highly valuable assets belonging to Unisys.

**B.     Unisys Protects Its Trade Secrets**

30.     The measures Unisys has taken to protect the secrecy of its confidential and proprietary information are extensive.  As an example, Unisys has a Confidentiality Policy (Exhibit 14) that protects Unisys's confidential and proprietary information.  Employees agree to and are trained on this policy.

31.     Additionally, Unisys' Code of Ethics and Business Conduct (Exhibit 15) provides clear instruction to its employees on handling and maintaining the secrecy of its confidential information, trade secrets, and intellectual property, and employees agree to and are trained on this policy as well:



32.     Unisys employees are also required to sign its Employee Proprietary Information, Invention and Non-Competition Agreement ("Proprietary Information/Non-Compete Agreement"), which, among other things, states that employees will not "transfer, or allow to be transferred, any of the Company's proprietary data or information" or "solicit or attempt to

influence any employee or Unisys to terminate his or her employment with Unisys."  Exhibits 1–2 §§ 1, 6.  Both Gilbert and McGarvey signed these agreements.

33.     Additionally, Gilbert's and McGarvey's stock and cash grants are governed by agreements ("Compensation Agreements") under which they agreed to keep company information confidential.  Exhibits 3–4 § 10; Exhibits 5–6 § 11; Exhibits 7–13 § 10.

34.     Further, Unisys's DWS SharePoint sites store highly sensitive documents that contain confidential information regarding Unisys' proprietary technologies, design ideas, customer lists and strategies, pricing, product planning, cost management, design guidelines, research and development efforts, and other trade secrets.  Unisys takes reasonable steps to maintain the secrecy of the contents of the documents stored on the Unisys SharePoint sites.  The Unisys SharePoint sites are not accessible to the public.  All access to the Unisys SharePoint sites requires authorization. Communication between a user's web browser and the Unisys SharePoint sites is also encrypted to prevent eavesdropping and interception.

35.     Moreover, access to any specific portions of the Unisys SharePoint sites is limited according to the job responsibilities of each individual user.  That is, the documents stored on the Unisys SharePoint sites are not generally available to all Unisys employees.  Rather, individual employees must be expressly and individually granted access to specific portions of the Unisys SharePoint sites.

**C.     Atos Needed Unisys to Compete**

36.     Like Unisys, Atos offers DWS products and services, and Unisys and Atos often compete to serve the same customers.  Atos differs from Unisys in its commitment to R&D and its DWS business.  In or around 2020, Atos stopped investing in the growth of its DWS business, preferring instead to try to maintain what it had and change its focus to cloud services.  In 2021,

Atos saw a drop in revenue (even though IT services was growing), and blamed that decline on its classic IT business, which encompassed digital workplaces.  At the beginning of 2022, the company issued a profit warning.  According to Atos, its digital workplace division would need to be the subject of an "ambitious turnaround."  Exhibit 17.

37.     Unisys figured in Atos's attempted turnaround.   As noted above, around October/November 2022, the wheels were put in motion for Gilbert to join Atos and take a team from Unisys (who brought thousands of downloaded trade secret documents with them) along with him.  On November 1, 2022, Gilbert forwarded confidential Unisys communications with one of its customers to an Atos employee. On December 26, 2022, Gilbert drafted an email to Atos's Human Resources lead that listed other Unisys employees that he would like to take with him, along with their confidential Unisys compensation and the value that they would add to Atos.  For example, Gilbert stated that one of those Unisys employees would almost guarantee a long-term renewal of a particular contract.  Gilbert drafted this email around the time that Gilbert claimed Atos's CEO Nourdine Bihmane reached out and asked him to come to work at Atos.

38.     As noted above, before announcing his departure to Unisys, on January 4–5, 2023, McGarvey downloaded approximately 13,000 confidential Unisys files to his personal laptop, including highly confidential and proprietary files concerning a number of critically important technical and business matters, including product architectures, customer agreements including prices and features, business plans such as potential acquisitions and mergers, and future product developments.  Based on McGarvey's computer browsing history, Unisys believes that McGarvey signed an agreement with Atos on January 5.

39.     There was no legitimate, job-related purpose for McGarvey to download this immense quantity of confidential Unisys documents to his personal computer.   And it was

completely divergent from McGarvey's past practices.  For example, in the three months prior to January 4, 2023, McGarvey had downloaded less than 100 documents from the Unisys SharePoint sites, whereas he downloaded 130 times that volume over a two-day period, five days before announcing his departure to Unisys.  On January 10, 2023, McGarvey signed a performance and share agreement with Atos.  Then, in an attempt to cover his tracks, on January 12, 2023, McGarvey deleted 7,000 of documents he downloaded to his personal laptop from his Unisys OneDrive.  Unisys OneDrive is similar to SharePoint and allows employees to internally store and access documents in a server instead of on their computers.

40.     Around the same time, Gilbert directly solicited a Unisys executive to join him at Atos.  On January 11, 2023, after attending a leadership meeting, Gilbert sent a WhatsApp message to a member of Unisys' senior leadership team stating "[y]ou know I will take you" "[a]ssuming you want to," despite the existence of non-solicitation provisions in Gilbert's compensation agreements and in Unisys policies prohibiting this very conduct:



*See* Exhibit 16.

41.     The next week, Gilbert deleted many emails and wiped his Chrome browser history. In addition, on January 22, 2023, Gilbert accessed his Google Drive at least twenty times over a twenty-five-minute period, which appeared to be an unusual level of activity not related to his normal course of business. Unisys' policy is to use Microsoft One Drive for cloud storage, and not Google Drive. Unisys does not use Google Drive for any reason in its normal business operations.

42.     Gilbert held several calls with Atos employees in his last week at Unisys, and began messaging Atos Senior Vice President Hansjorg Walz through Microsoft Teams messages. During his January 19, 2023 conversation with Walz, Gilbert outlined his vision for the groups in the DWS division at Atos. During the same conversation, Walz provided Gilbert with a draft organization structure, which included three other Unisys employees. Gilbert then made clear to Walz that he would use his knowledge from Unisys to push Atos forward, stating that he "spent last 2 years in the model Atos is trying to get to, so [he] know[s] what works and doesn't. Have to now show Nourdine the same." Walz responded with "indeed." *See* Exhibit 18.

43.     Gilbert and McGarvey disclosed none of this during their exit interviews. Instead, they told coordinated stories, blaming Unisys leadership for their departures and claiming that Unisys had failed to acquire any companies for them—which was untrue, given that Unisys purchased *two* companies for DWS while it was helmed by Gilbert and McGarvey. They also indicated that they were unhappy with their compensation at Unisys, and indicated that taking a position at Atos would be far more lucrative.

44.     During his exit interview, McGarvey also denied downloading Unisys confidential documents to his personal laptop. He was asked multiple times during his exit interview whether he had downloaded Unisys documents and each time replied that he had not, and in fact, there was

nothing at Unisys he would want.  McGarvey also refused to acknowledge requests by Unisys to provide his personal laptop for inspection, to ensure it did not contain Unisys confidential information.  And, despite leaving Unisys weeks ago, Gilbert has yet to return his Unisys-issued laptop.  In response to Unisys' follow-up on the issue, he simply promised that he would send it when he had the time.

## D.    Defendants Have Misappropriated Unisys' Trade Secrets

45.    As explained above, Gilbert and McGarvey have a duty to maintain Unisys' trade secret information in confidence.   They breached that duty by actual and threatened misappropriation of Unisys' trade secrets.

46.     As Unisys' Senior Vice President and General Manager for DWS, Gilbert was in charge of (and ultimately accountable for) the decisions in the DWS business unit.  He served as a member of Unisys' Executive Leadership Team, and was involved in Unisys' most confidential strategies to drive profitability, growth, and DWS innovation at Unisys, including with respect to acquisitions.  He was also involved in confidential sales strategies for clients and market delivery of DWS solutions, and led the vision and business decisions for the DWS business unit.  As a member of Unisys' Executive Leadership Team, Gilbert had a front row seat to Unisys' confidential business strategies.

47.    McGarvey worked closely under Gilbert at Unisys.  He was involved in confidential strategy meetings to drive profitability, growth, and DWS innovation at Unisys.  For example, McGarvey would evaluate the DWS market, analyze what offerings Unisys should provide in the future based on demand, and engage in portfolio management.  Whether Unisys' DWS offerings should include certain features was a decision within McGarvey's realm.  With Gilbert, McGarvey helped to shape the roadmap for the DWS business and was in charge of DWS development at

Unisys.   In other words, Defendants were heavily exposed to, and involved with, Unisys' confidential DWS playbook.

48.     Defendants also had extensive access to Unisys' confidential and proprietary business strategy and related technical information.   This includes, for example, confidential documents regarding Unisys' cost and pricing strategy, investments, partnerships, product roadmaps and projections, goals and plans for revenue growth and market power, product development, potential acquisition plans, and workforce plans.   Gilbert, for instance, was in charge of presenting the 2022 Digital Workplace Solutions PowerPoint (one of Unisys' documents accessed and unlawfully misappropriated) that summarizes the cost information for Unisys' products and projects, as well as projects under development.   As explained above, Gilbert is contractually obligated to maintain the confidentiality of this information.

49.     Further, as explained above, the 13,000 files McGarvey illicitly downloaded reflect this valuable, confidential information, such as client contracts, product architecture and designs, future business plans, and planned costs and projected profits.  For example, one of the documents, authored in 2022 by Gilbert, contains confidential long-term revenue and profit margin projections for Unisys' DWS business unit and describes specific confidential aspects of Unisys' strategic plan to allocate investments and resources to more effectively compete against its primary competitors, including Atos.  As another example, several downloaded documents include hiring and workforce plans, including technical implementation details.  Other documents include information related to Unisys' investigation into the market landscape for prospective acquisitions and joint partnerships for future product development.   Additionally, several downloaded documents include confidential information related to the architecture design for Unisys' communications platform as well as internal presentations that discuss the integration of Unify Square with Unisys.

McGarvey also took customer contracts with confidential pricing information, statement of works, customer workshops and oral presentations, and information related to Unisys' current pursuits. Such information, if revealed publicly or provided to a competitor such as Atos, would severely undermine Unisys' competitive position.

50.     Gilbert and McGarvey's misappropriation will not stop at their departures. At Atos, Gilbert and McGarvey will helm the global Digital Workplace business and report to Atos' CEO, while using Unisys' trade secrets to do so—as Gilbert made clear to Atos's Hansjorg Walz.

<u>**COUNT I**</u>
**Violation of the Defend Trade Secrets Act (DTSA)**
**(18 U.S.C. §§ 1836(b), 1839 *et seq.*)**

51.     Unisys incorporates and re-alleges every allegation above as if fully set forth herein.

52.     Unisys is the owner of certain confidential, valuable trade secrets contained in and relating to digital workplace solutions, as previously discussed. These trade secrets, which are not publicly disclosed, relate to Unisys' products and services that are used in or intended for use in interstate and foreign commerce. These confidential and proprietary trade secrets are of substantial economic value and have conferred a competitive advantage on Unisys, and Unisys has spent significant time and money developing such confidential information and trade secrets.

53.     At all times, Unisys has taken reasonable steps to maintain the secrecy of its trade secrets, including by requiring confidentiality agreements to be signed by any party granted access to Unisys' trade secrets.

54.     In the course of Gilbert's and McGarvey's employment, Unisys afforded Gilbert and McGarvey access to and use of Unisys' confidential information and trade secrets which Gilbert and McGarvey had a duty to maintain as confidential. Gilbert and McGarvey signed

confidentiality agreements where they expressly acknowledged and confirmed the confidential nature of these secrets.

55.     As stated above, Unisys sells its solutions throughout the United States.  The confidential information and trade secrets to which Defendants had access are related to Unisys' products and services that are used in, or intended for use in, interstate or foreign commerce.

56.     Gilbert and McGarvey actually misappropriated Unisys' confidential information and trade secrets to benefit themselves and Atos, and to allow Atos to unfairly compete against Unisys by using Unisys' trade secrets, including in this District.  Misappropriation of this type of information undermines Unisys' competitive position in the highly competitive technology solutions industry.  Further, at the time they left Unisys, Gilbert and McGarvey possessed extensive confidential information which they will inevitably use and disclose to Atos in the course of their employment.

57.     As a direct and proximate result of Defendants' current and continued misappropriation of Unisys' trade secrets, Unisys has been damaged, including but not limited to the loss of goodwill and profits, and will suffer imminent and irreparable harm.

58.     Thus, Defendants have engaged in the actual and threatened misappropriation of Unisys' confidential information in violation of the DTSA.

59.     The actions of the Defendants were and continue to be intentional, willful, outrageous and malicious, justifying the imposition of injunctive relief and actual and exemplary damages to the extent permitted under the law.

60.     Unless enjoined by this Court, Defendants' acts of misappropriation will continue and Unisys will suffer irreparable harm.  Further, there is a genuine, imminent threat that Defendants will continue to disclose or use Unisys' trade secrets in the course of their employment

with Atos.  Unisys, therefore, lacks an adequate and complete remedy at law and is entitled to injunctive relief to prevent the threatened or actual misappropriation of Unisys' trade secrets under 18 U.S.C. § 1836(b)(3).

## COUNT II
### Violation of the Pennsylvania Uniform Trade Secrets Act
### (PUTSA) (12 Pa. C. S. § 5301 *et seq.*)

61.    Unisys incorporates and re-alleges every allegation above as if fully set forth herein.

62.    In the course of Gilbert's and McGarvey's employment, Unisys afforded Gilbert and McGarvey access to and use of Unisys' confidential information and trade secrets which Gilbert and McGarvey had a duty to maintain as confidential.  Gilbert and McGarvey signed confidentiality agreements where they expressly acknowledged and confirmed the confidential nature of these secrets.

63.    That information is kept confidential and is not publicly disclosed, and Unisys derives value from the confidentiality of such information.

64.    As alleged above, Gilbert and McGarvey actually misappropriated Unisys' confidential information and trade secrets to benefit themselves and compete against Unisys. Misappropriation of this type of information undermines Unisys' competitive position in the highly competitive technology solutions industry.

65.    Further, at the time they left Unisys, Gilbert and McGarvey possessed extensive confidential information which they will inevitably use and disclose to Atos in the course of their employment.

66.    As a direct and proximate result of Defendants' misappropriation of Unisys' confidential information and trade secrets, Unisys has suffered and will continue to suffer substantial damages, including but not limited to the loss of goodwill and profits.

67.    Thus, Defendants have engaged in the actual or threatened misappropriation of Unisys' confidential information in violation of PUTSA.

68.    The actions of the Defendants were and continue to be intentional, willful, outrageous and malicious, justifying the imposition of injunctive relief and actual and exemplary damages to the extent permitted under the law.

69.    The threatened and actual injuries that Unisys has suffered or will suffer are immediate and irreparable.  Because of the difficulty in quantifying injury and harm to Unisys' ability to compete, acquire and maintain a competitive advantage through its confidential information and trade secrets and Defendants' wrongful use of such information, monetary damages alone will not adequately compensate Unisys for Defendants' misappropriation of Unisys' confidential information and trade secrets and Defendants' inevitable disclosure of that confidential information and trade secrets.  Unisys, therefore, lacks an adequate and complete remedy at law and is entitled to injunctive relief to prevent the threatened or actual misappropriation of Unisys' trade secrets.

## COUNT III
### Breach of Contract

70.    Unisys incorporates and re-alleges every allegation above as if fully set forth herein.

71.    Gilbert voluntarily entered the Proprietary Information/Non-Compete and Compensation Agreements with Unisys.  *See* Exhibits 1, 3–10.

72.    McGarvey voluntarily entered the Proprietary Information/Non-Compete and Compensation Agreements with Unisys.  *See* Exhibit 1.

73.    The Proprietary Information/Non-Compete and Compensation Agreements are valid, binding, and enforceable.

74.     The Proprietary Information/Non-Compete and Compensation Agreements are supported by adequate legal consideration.

75.     Unisys adequately performed as required under the Proprietary Information/Non-Compete and Compensation Agreements.

76.     Under the terms of the Proprietary Information/Non-Compete Agreement, Gilbert and McGarvey agreed they will not "directly or indirectly during or after the term of [their] employment … transfer, or allow to be transferred, any information not generally known outside the Company or that is designated by the Company as 'Confidential' or 'Restricted Confidential' or is similarly designated, to any person, firm, or organization not authorized by the Company to receive it, or to use any such designated information other than for the sole benefit of the Company."  Exhibits 1, 2.

77.     Gilbert's and McGarvey's Compensation Agreements required that they "acknowledge [their] continuing obligations" under the Proprietary Information/Non-Compete Agreement.  Exhibits 3–13.

78.     Under the terms of the Proprietary Information/Non-Compete Agreement, Gilbert agreed to "not, during [their] employment at Unisys and for a period of one (1) year after the termination of [their] employment at Unisys, directly or indirectly" "solicit or attempt to influence any employee of Unisys to terminate his or her employment with Unisys."  *See* Exhibit 1.

79.     Under the Compensation Agreements, Gilbert agreed not to "directly or indirectly solicit or attempt to influence any employee of Unisys to terminate his or her employment with Unisys, except as directed by Unisys."  *See* Exhibits 3–10.

80.     Gilbert and McGarvey materially breached the Proprietary Information/Non-Compete and Compensation Agreements by transferring or allowing to be transferred information

21

not generally known outside Unisys and using such information other than for the sole benefit of Unisys.

81.     Gilbert materially breached the Proprietary Information/Non-Compete and Compensation Agreements by soliciting Unisys' employees to work at Atos.

82.     As a proximate result of Gilbert's and McGarvey's actions, Unisys has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

83.     Unisys is entitled to damages, temporary, preliminary, and permanent injunctive relief against further breaches of the Proprietary Information/Non-Compete and Compensation Agreements.

## JURY DEMAND

84.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Unisys demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Unisys prays for relief as follows:

1.     Award a temporary restraining order, preliminary injunction, and/or permanent injunction prohibiting:

- Defendants from disclosing, retaining, or using any confidential or trade secret information of Unisys, including without limitation to others within Atos.

- Defendants from working at Atos (and each of their affiliates) in its DWS business unit for one year from the entry of judgment.

- Gilbert from soliciting any employee at Unisys to leave his or her employment at Unisys.

2.      Award Unisys damages in an amount to be determined at trial, including without limitation, Unisys' lost revenues and profits, and any unjust enrichment, restitution, or disgorgement, plus a reasonable royalty to the extent permitted under the law.

3.      Award Unisys punitive damages in an amount to be determined at trial.

4.      Award Unisys pre-judgment and post-judgment interest.

5.      Award Unisys' attorneys' fees and costs.

6.      Award Unisys any other relief as the Court deems appropriate.

Dated: February 13, 2023

Respectfully submitted,

*/s/ Julian C. Williams*
Julian C. Williams (S.B.N. 324771)
julian.williams@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5000
Fax: (215) 963-5001

Robin Nunn (*pro hac vice* forthcoming)
robin.nunn@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
Phone: (212) 309-6779
Fax: (212) 309-6001

Michael W. De Vries (*pro hac vice*
forthcoming)
michael.devries@kirkland.com
California S.B.N. 211001
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400

Adam R. Alper (*pro hac vice* forthcoming)
adam.alper@kirkland.com
California S.B.N. 196836
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

Gianni Cutri (*pro hac vice* forthcoming)
gianni.cutri@kirkland.com
Illinois S.B.N. 6272109
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

Leslie M. Schmidt (*pro hac vice* forthcoming)

0

New York S.B.N. 4884078
leslie.schmidt@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800

*Attorneys for Plaintiff*
Unisys Corporation