**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNISYS CORPORATION, | |
| Plaintiff, | |
| v. | Case No.  2:23-CV-0555 |
| LEON GILBERT, and MICHAEL MCGARVEY, | JURY TRIAL DEMANDED |
| Defendants. | |

## DEFENDANTS LEON GILBERT AND MICHAEL MCGARVEY'S RESPONSE IN OPPOSITION TO PLAINTIFF UNISYS CORPORATION'S AMENDED REQUEST FOR INJUNCTIVE RELIEF

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

RESULTS OF EXPEDITED DISCOVERY ............................................................4

    A. McGarvey Had No Post-Employment Access to the 13,000 Unisys
    Documents He Allegedly Downloaded ........................................................4

        1. McGarvey Could Not Access the Unisys System After His Unisys
        Credentials Were Terminated on January 27, 2023 .............................6

        2. McGarvey Wiped His Local Hard Drive Three Times, which
        Eliminated Any Access to the Files on that Drive ...............................7

        3. Unisys Has No Evidence that McGarvey Still Has Possession of the
        Downloaded Files.................................................................................9

    B. Gilbert Has Not Accessed and No Longer Has Access to Unisys
    Documents Following Termination of His Employment. ..........................11

    C. Unisys Did Not Take Steps to Prevent Defendants from Taking
    Confidential Information Despite Their Suspicions ...................................13

LEGAL STANDARD.......................................................................................16

ARGUMENT ..................................................................................................16

    A. Unisys Fails to Establish a Likelihood of Success on Any Claims for
    Which It Could Conceivably Suffer Irreparable Harm..............................17

    B. Unisys Fails to Show That the Remaining Factors Favor
    Preliminary Relief.....................................................................................23

        1. The Balance of Hardships Does Not Favor Injunctive Relief.............23

        2. The Public Interest Does Not Favor Injunctive Relief.......................25

    C. Unisys Should Be Required to Post Bond for Any Injunction .................25

CONCLUSION ...............................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ADP, Inc. v. LaCivita*,
2022 WL 5177374 (D.N.J. June 30, 2022)........................................................20

*ASI Bus. Sols., Inc. v. Otsuka Am. Pharm., Inc.*,
233 F. Supp. 3d 432 (E.D. Pa. 2017)................................................................17

*Bimbo Bakeries USA, Inc. v. Botticella*,
613 F.3d 102 (3d Cir. 2010) ............................................................................16

*CentiMark Corp. v. Jacobsen*,
2011 WL 5977668 (W.D. Pa. Nov. 29, 2011)..................................................22

*Colorcon, Inc. v. Lewis*,
792 F. Supp. 2d 786 (E.D. Pa. 2011)..........................................................17, 25

*Contour Data Sols. v. Gridforce Energy Mgmt.*,
2021 WL 5536266 (E.D. Pa. Sept. 20, 2021).............................................19, 20

*E.R. Squibb & Sons, Inc. v. Hollister, Inc.*,
1991 WL 15296 (D.N.J. Feb. 5, 1991) .............................................................19

*Ecosave Auto., Inc. v. Delaware Valley Auto., LLC*,
540 F. Supp. 3d 491 (E.D. Pa. 2021)...........................................................9, 17

*First Health Grp. Corp. v. Nat'l Prescription Adm'rs, Inc.*,
155 F. Supp. 2d 194 (M.D. Pa. 2001)...............................................................22

*Freedom Med. Inc. v. Whitman*,
343 F. Supp. 3d 509 (E.D. Pa. 2018)...........................................................16, 22

*Greenberg v. Haggerty*,
2020 WL 7227251 (E.D. Pa. Dec. 8, 2020)..................................................16, 18

*Kos Pharm., Inc. v. Andrx Corp.*,
369 F.3d 700 (3d Cir. 2004) .............................................................................16

*Mettler-Toledo, Inc. v. Acker*,
908 F. Supp. 240 (M.D. Pa. 1995)....................................................................24

*Schuylkill Valley Sports, Inc. v. Corporate Images Co.*,
    2020 WL 3167636 (E.D. Pa. June 15, 2020)................................................24, 25

*Van Prods. Co. v. Gen. Welding & Fabricating Co.*,
    419 Pa. 248 (1965)................................................................................21

*Warner Lambert Co. v. McCrory's Corp.*,
    718 F. Supp. 389 (D.N.J. 1989).........................................................19

**Other Authorities**

Federal Rule of Civil Procedure 65 ...................................................16, 25

*all emphases are added unless otherwise noted

**TABLE OF EXHIBITS**[1]

| Exhibit | Description |
|---|---|
| Exhibit A | Excerpted Transcript of the Deposition of Matthew Marshall (03/01/2023) |
| Exhibit B | Excerpted Transcript of the Deposition of Michael McGarvey (03/01/2023) |
| Exhibit C | Text Message Conversation between Michael McGarvey and Joel Raper (DEFS 0000360-366) |
| Exhibit D | Excerpted Office 365 Audit Log for Michael McGarvey (UNISYS-00254224) |
| Exhibit E | Audit Log Glossary (02/27/2023) (UNISYS-00325668) |
| Exhibit F | Excerpted Transcript of the Deposition of Christopher Racich (02/28/2023) |
| Exhibit G | Excerpted Transcript of the Deposition of Michael Thomson (03/02/2023) |
| Exhibit H | Excerpted Transcript of the Deposition of Leon Gilbert (03/03/2023) |
| Exhibit I | Excerpted Nirsoft Browser Log for Leon Gilbert (UNISYS-00314934) |
| Exhibit J | Excerpted Transcript of the Deposition of Glynnis Davis (03/01/2023) |
| Exhibit K | Email from Glynnis Davis to Michael McGarvey (01/25/2023) (UNISYS-00325651) |
| Exhibit L | Supplemental Declaration of Michael McGarvey |
| Exhibit M | Supplemental Declaration of Leon Gilbert |
| Exhibit N | Declaration of Christopher Racich |

---

[1] Due to size constraints and for readability, Exhibits E and I, which are Excel files in their native form, have been excerpted to display the most relevant information to the Court. Native versions of the files can be provided to the Court if necessary to assist with its decisionmaking.

**INTRODUCTION**

Despite Plaintiff Unisys Corporation's ("Unisys") attempts to muddy the waters with accusations of grand conspiracies and concocted narratives, the facts in this case were and still are straightforward. Defendants Leon Gilbert ("Gilbert") and Michael McGarvey ("McGarvey") have not used any Unisys confidential or trade secrets information since their employment at Unisys ended, and they do not have access to any confidential or trade secrets information today. Expedited discovery—including Unisys's own evidence—has only confirmed these facts.

Notwithstanding this uncontroverted truth, Unisys doubles down, again renewing its request to bar Defendants not only from their employment at their chosen employer, Atos SE ("Atos"), but at any Unisys competitor, without a valid noncompete agreement to speak of.[2] In the process, Unisys baldly misrepresents the record to make a case where there is none. But under even a cursory review, Unisys's request for such an extreme remedy fails to satisfy the required factors.

First, Unisys's request for prospective injunctive relief fails for the fundamental reason that Unisys cannot show a likelihood of success on any claims for which it could conceivably suffer irreparable harm. Indeed, as summarized in

---

[2] As with the initial TRO, Defendants agree to be enjoined from using Unisys confidential or trade secrets information and Gilbert agrees not to solicit Unisys employees to the extent he is obligated under his employment contract. Thus, Defendants focus their opposition on Unisys's extraordinary request to enjoin them from their chosen employment without an enforceable noncompete agreement.

the below table, for each alleged category of trade secrets or confidential information Unisys identifies, the evidence establishes that Defendants do not possess or have access to such information such that they could possibly disclose the information either now or in the future. Unisys has *no evidence* to contradict these facts, instead trying to shift the burden to Defendants to corroborate a negative (i.e., that they do not have access to any information) when Unisys bears the burden to *clearly* establish that it will be irreparably harmed without an injunction. Unisys's attempt to revive its arguments through speculation and finger-pointing falls far short of its burden.

| Alleged Trade Secret or Confidential Information or Misappropriation | Evidence of Disclosure to Others? | Evidence of Defendants' Ongoing Possession? | Evidence of Ongoing or Threatened Disclosure? |
|---|---|---|---|
| **McGarvey** | | | |
| Documents Downloaded on McGarvey's Unisys-Controlled Laptop | None | None | None |
| McGarvey's "Performance Share Rights" Email | No longer accused due to lack of evidence | N/A | N/A |
| McGarvey Visits to Atos Websites | No longer accused due to lack of evidence | N/A | N/A |
| **Gilbert** | | | |
| Documents on Gilbert's OneDrive | None | None | None |
| Documents on Gilbert's iPhone | None | None | None |
| Gilbert's Google Drive Visits | No longer accused due to lack of evidence | N/A | N/A |

| Gilbert's Nov. 2022 email to expired Atos address of current Unisys employee | No longer accused due to lack of evidence | N/A | N/A |
|---|---|---|---|

Second, Unisys's motion fails for the independent reason that it cannot establish that the balance of hardships or public interest favor its anticompetitive injunction. The only harms Unisys identifies are either past harms or speculative, and Defendants have already agreed to an injunction against their use or disclosure of Unisys information and Gilbert's solicitation of Unisys employees. On the other hand, the harm to Defendants from an injunction barring them from employment in the industry in which they have exclusively worked for decades will cause significant and concrete harm to Defendants and their families, eliminating their primary or sole source of income. Unisys all but concedes this fact, amending its initial request for an indefinite ban on Defendants' employment to one year and the DWS industry specifically. But even a year without employment at the same level and using the same skills that they have curated over decades will cause significant hardship to Defendants and their families that Unisys cannot justify.

Ultimately, because Unisys cannot show that it is likely to establish irreparable harm from Defendants' ongoing or future conduct, and because the extraordinary remedy it seeks is beyond the scope of its legal rights with respect to Defendants, Defendants respectfully request that the Court deny Unisys's Motion.

## RESULTS OF EXPEDITED DISCOVERY

Expedited discovery has only confirmed that Defendants have not used, disclosed, or accessed, and currently have no access to, any Unisys information.

### A.    McGarvey Had No Post-Employment Access to the 13,000 Unisys Documents He Allegedly Downloaded

Unisys's amended request again relies on the "13,000 documents"[3] McGarvey allegedly downloaded while still employed at Unisys on his Unisys-approved, "Bring Your Own Computer" (BYOC) laptop.  TRO, Dkt. 56 at 9-10.  However, as with its initial TRO, Unisys cites *no evidence* showing that McGarvey had access to, or currently has access to, those documents following the termination of his employment on February 5, 2023, or that he ever disclosed those documents to anyone outside of Unisys.  *Id.*  Instead, Unisys relies on speculation that McGarvey *might* have been able to transfer documents through some elaborate digital gymnastics.  *Id.* at 12.  But "what ifs" are not the stuff of preliminary injunctions.  At a minimum, Unisys must provide concrete evidence that clearly shows Defendants have access to *actual Unisys trade secrets* that will cause it irreparable

---

[3] Faced with the dearth of evidence supporting its accusations, Unisys tries to make McGarvey's conduct look nefarious by artificially inflating the number of downloaded documents, arguing that McGarvey has no explanation for why he downloaded such a high volume.  TRO at 9.  But McGarvey has no explanation for why there would be such a high number of downloads because *he did not download thousands of documents*.  Instead, ███████████████████████ ██████████████████████ meaning that a single download is recorded as multiple downloads, inflating the total number.  Ex. A at 73:7-74:6.

harm if disclosed.  Unisys has no such evidence.

Indeed, Unisys's acting CIO, Matthew Marshall, confirmed that Unisys has **no evidence** to contradict McGarvey's explanation that he first synced folders from Unisys's SharePoint site before downloading specific documents to sort through them and prepare a transition package for his successor.  Ex. A at 86:19-87:7; Ex. L ¶¶ 7-19; Ex. B at 124:12-128:3, 134:2-137:15.  In fact, Gilbert's replacement at Unisys, Joel Raper, was well aware of McGarvey's transition package and even praised him for it at the time it was being completed, noting that "███████████████

████████████████████████████████████████████

████████████████████  *See* Ex. C; Ex. L ¶ 15.

Despite the statements of its own leadership, Unisys baldly accuses McGarvey of lying about the transition package, stating that the forensic evidence does not support McGarvey's explanation.  TRO at 9.  But the forensics logs produced by Unisys in fact show that on January 4 and 5, 2023 (the days Unisys claims McGarvey improperly downloaded the documents), McGarvey first performed more than ███ ████████ operations titled ██████████████████ before he performed a single ████████████████ operation.  *See* Ex. D at rows 66,886-77,423 (Office 365 activity log for McGarvey showing approximately ████████████████████ operations on January 4, 2023); *id.* at row 77,514 (showing first ████████████ operation on January 4, 2023).  According to Unisys's documents, the



Ex. E at 00325672, 684.   Thus, Unisys's own logs demonstrate that McGarvey first synced folders/files from the Unisys SharePoint using the sync feature and then downloaded files he wanted to further review and compile for his successor, as McGarvey explained he did.  Ex. B at 134:2-137:15.

### 1.   *McGarvey Could Not Access the Unisys System After His Unisys Credentials Were Terminated on January 27, 2023*

More importantly, regardless of whether McGarvey downloaded or synced the identified documents, Unisys provides ***no evidence*** that McGarvey had access to those documents on his BYOC laptop after Unisys terminated his credentials on January 27, 2023.   Mr. Marshall confirmed that, although Unisys described McGarvey's laptop as his "personal" laptop, Unisys had in fact approved McGarvey's use of the laptop as part of its BYOC program.  Ex. A at 94:22-95:9. Mr. Marshall then explained that the only way to access the Unisys-installed system on McGarvey's BYOC laptop after Unisys terminated his credentials would be if the device was not connected to a network such that the computer could not register that the credentials were disabled.  *Id.* at 103:10-105:6. Yet McGarvey acknowledged that his credentials had been disabled on January 27, 2023, which Unisys does not dispute, meaning the termination of his credentials registered with the network as of

the date Unisys terminated his access.  Ex. L ¶ 9.  As of January 27, 2023, therefore, McGarvey could not access the Unisys-installed system on his laptop.

### 2.    *McGarvey Wiped His Local Hard Drive Three Times, which Eliminated Any Access to the Files on that Drive*

Not only had McGarvey lost access to the Unisys system as of January 27, 2023, the evidence also establishes that McGarvey reformatted and wiped his local hard drive three times before and after his employment at Unisys ended, removing any possible access to the documents (which were also encrypted) stored on his hard drive.  McGarvey first wiped his hard drive on January 27, 2023—nine days before his last day at Unisys—when he confirmed with Unisys IT that he should do so.  Ex. B at 188:24-:190:5, 194:6-17, 197:23-198:11.   After returning from vacation on February 4, 2023 and learning that the reinstallation had not worked correctly, McGarvey began reformatting and wiping his hard drive a second time.  Ex. L ¶¶ 23-24.  And McGarvey wiped his hard drive a third time on February 14, 2023, when he continued to experience issues with his new operating system and realized that the BIOS system had a defective UEFI (firmware interface) setting.  *Id.*  Defendants' forensics expert, Christopher Racich, confirmed that McGarvey had wiped his hard drive as of at least February 14, 2023.  *See* Ex. F at 82:16-85:7.

As Mr. Marshall confirmed, by wiping and reformatting his hard drive, McGarvey would not be able to access any documents, including Unisys documents, saved on that drive.  Ex. A at 102:5-22; Ex. N ¶ 18.  Without access to the documents

on his BYOC hard drive, there was (and still is) no possibility that McGarvey could use or disclose Unisys's alleged trade secrets.

The only evidence Unisys cites to contradict that McGarvey in fact wiped his drive three times is a document allegedly showing that McGarvey's BYOC laptop pinged a Unisys-installed software server on February 6, 2023. TRO at 12 (citing Antunez Decl. ¶¶ 21, 28). However, the document is riddled with inconsistencies, including (a) identifying inconsistent CPU (central processor) count and type, as well as free disk space, from McGarvey's BYOC laptop, Ex. B at 210:2-9, 212:3-7, and (b) showing a connection starting at 1:56 a.m. EST on February 5, 2023, when McGarvey was not connected to the Internet, *id.* at 214:19-215:7. Moreover, Unisys provides no evidence that the software that pinged the server was not installed on the laptop's BIOS such that it would reinstall until, on February 14, 2023, McGarvey was able to correct the error in the BIOS reformatting. *Id.* at 217:6-11. Unisys also fails to show any connection between McGarvey's laptop and the software server after February 6, 2023, when, assuming McGarvey still had the Unisys system on his laptop, there should have been additional connections.

At best, therefore, Unisys establishes that the reinstallation McGarvey began on February 4, 2023, continued to ping his Unisys-installed software until February 6; it does not establish that any Unisys documents remained on McGarvey's hard drive or that he had access to the Unisys system. Unisys's speculation that

something nefarious occurred is not sufficient to establish its right to preliminary relief. *See Ecosave Auto., Inc. v. Delaware Valley Auto., LLC*, 540 F. Supp. 3d 491, 502 (E.D. Pa. 2021) (speculation of misappropriation not sufficient for injunction).

### 3. *Unisys Has No Evidence that McGarvey Still Has Possession of the Downloaded Files*

Without any evidence that McGarvey had access to the Unisys system or the files on his hard drive after his employment at Unisys ended, the only basis for Unisys to establish McGarvey's ongoing possession of its alleged secrets—and the corresponding irreparable harm from their threatened disclosure—would be to establish that he somehow transferred the documents to hardcopy form (by printing them) or to another storage device (e.g., an external hard drive) before he lost access to the files. Unisys provides *no evidence* that either of these circumstances occurred.

Indeed, both Unisys's COO Mr. Thomson and its CIO Mr. Marshall testified that Unisys has *no evidence* to show that McGarvey downloaded Unisys documents to any non-Unisys-controlled device or system. Ex. A at 89:12-22; Ex. G at 57:15-58:23. Mr. Marshall also confirmed that Unisys has *no evidence* that McGarvey or Gilbert ever printed any of the documents McGarvey allegedly downloaded, even though Unisys has access to the metadata for those documents that would confirm if they had been. Ex. A at 105:24-106:4; *see also* Ex. N ¶¶ 10-12.

Faced with the lack of actual evidence that McGarvey still possesses thousands of Unisys files, Unisys speculates in its TRO that McGarvey's installation

of a new Bitlocker recovery key (as part of his reformatting of this BYOC laptop)
**could** have allowed him to override the encryption of the Unisys system.  TRO at 12
(citing Antunez Decl.).   But not only is this implausible as it would require
McGarvey to have Unisys credentials that allowed him to replace the Unisys-
controlled Bitlocker key for its own system, it is unsupported by any actual evidence
that McGarvey in fact accessed the Unisys system.  Ex. N ¶¶ 15-18; Ex. L ¶¶ 23-25.
If anything, that McGarvey created a new Bitlocker key confirms that he installed a
new operating system, as Windows 11 requires the creation of a Bitlocker key as
part of the installation process, which gives access to the ***newly installed system*** (not
the system that is being replaced).  *Id.*  Once more, Unisys makes bold accusations
about technical possibilities without anything to show what actually occurred.

Ultimately, despite producing and obtaining hundreds of thousands of pages
of document discovery and deposing multiple witnesses, Unisys points to no
evidence that Defendants had possession of or access to the files allegedly
downloaded by McGarvey after McGarvey's employment ended.   Without
possession, there can be no ongoing or threatened misappropriation that could
conceivably cause irreparable harm to Unisys, and its request for relief falls flat.[4]

---

[4] Unisys dropped its allegations that McGarvey acted improperly by accidentally
visiting the Atos-affiliated websites, and for good reason.  Unisys has no evidence
McGarvey ever logged in to either website.  Ex. A at 68:2-74:21; Ex. L ¶¶ 4-6.

**B.    Gilbert Has Not Accessed and No Longer Has Access to Unisys Documents Following Termination of His Employment.**

Recognizing that the allegations against McGarvey are unfounded, Unisys instead points its finger at Gilbert based on his self-disclosure in response to Unisys's original TRO that he has some Unisys documents on his OneDrive account. TRO at 5-8.  However, as Gilbert explained in disclosing his possession of these documents, he has not used or disclosed the documents while employed at Atos and has not had access to them since being segregated from them on February 13.  Ex. M ¶ 11; Ex. H at 57:4-20, 80:17-23.  Unisys provides *no evidence* otherwise.

Instead, Unisys speculates that (a) Gilbert could somehow access the documents from which he has been segregated, and (b) Gilbert has committed the contents of each of the documents to his memory such that he will disclose the information even without access to them.  TRO at 5-8, 13.  But this is not what the evidence shows.  For one, Unisys provides no evidence that Gilbert can in fact access the documents formerly held on his OneDrive (from which he has been segregated), or that anyone else at Atos can access them.  In fact, Atos has only preserved the documents to avoid spoliation, with every intent to delete the documents as soon as it is permissible.  In the meantime, Gilbert has absolutely no ability to access the documents.  Ex. H at 57:4-20, 80:17-23.

Moreover, contrary to Unisys's claims, Gilbert stated explicitly that he does not have any memory of the details of the documents on his OneDrive; that any

11

knowledge is general in nature and based on his experience; that the information in the documents is also publicly available or not confidential; and that he has taken steps to wall himself off from any decisions related to clients shared by Atos and Unisys to avoid any appearance of impropriety.  The table below summarizes the alleged trade secrets on Gilbert's now-segregated OneDrive and Gilbert's ability to use the information in those documents:

| Alleged Gilbert Trade Secrets | Gilbert Use of Information |
|---|---|
| **(Ex. 28 to TRO)** | Most information is shared publicly or not confidential, Ex. H 133:17-22, 136:24-137:3, 142:5-18, 147:14-25, 152:5-53:7, 154:12-23 Gilbert would not have shared with Atos, 148:19-149:3, 155:16-156:3 No recollection of specifics, 157:12-24, 158:9-25 |
| **(Ex. 29 to TRO)** | No value or interest to Atos, 167:13-22, 170:15-171:19, 185:8-186:2 Has informed Atos he cannot work on one shared client on list, 170:1-8 Information available publicly, 176:3-7 |
| **(Ex. 30 to TRO)** | Nothing "highly confidential" in document, 200:14-16; 208:7-21 Contains general information that is in every business leader's head when it comes to mergers and acquisitions, 213:6-20 |
| **(Ex. 31 to TRO)** | Shared publicly, 219:9-17 Old information with no value to, and not shared with, Atos, 220:2-7 |
| **(Ex. 32 to TRO)** | Information is publicly available/not confidential, 231:8-14; 234:3-23, 232:16-24 |

Similarly, through his good faith efforts to disclose any possible possession of Unisys documents, Gilbert submitted his cell phone for imaging by Defendants'

forensics expert, Mr. Racich.   Through this analysis, Mr. Racich located 21 additional Unisys documents on Gilbert's phone, which Defendants produced to Unisys.  TRO, ex. 45.  Gilbert was not aware of the existence of these documents, nor had he accessed them since before his employment at Unisys ended.  *Id.*; Ex. H at 245:11-13, 263:24-264:3; Ex. F at 222:2-224:6 (last access was December 6, 2022).  Instead, the documents were automatically cached on his phone by the iOS system before Atos ever approached Gilbert about returning.  Ex. F at 215:15-216:8. And Gilbert has no ability to access these documents.  *Id.* 42:11-16; Ex. M ¶ 17-19.[5]

There is therefore ***no evidence*** of past improper use of the documents on Gilbert's laptop and phone, nor ongoing or threatened use of the documents in the future.[6]  And in any event, Gilbert has already agreed to be enjoined from using or disclosing any Unisys information.  Unisys's request for the extreme remedy of barring Gilbert from his employment at Atos and in the DWS industry at large is simply unsupported by any conceivable risk of irreparable harm.

### C.    Unisys Did Not Take Steps to Prevent Defendants from Taking Confidential Information Despite Their Suspicions

In addition to confirming that Defendants do not have access to any Unisys

---

[5] Tellingly, Unisys has dropped its accusation that Gilbert misappropriated trade secrets by forwarding an email in November 2022 to the Atos email address for Emmanuel Torres, recognizing that Mr. Torres was a ***current Unisys employee***.

[6] Unisys also dropped its accusation that Gilbert acted improperly by accessing his personal Google Drive on January 22, 2023, as the evidence confirms Gilbert was trying to ***download*** documents from his Drive.  *See* Ex. I at rows 279-280.

information, expedited discovery has also shown that Unisys took no steps to prevent Defendants from taking any Unisys documents with them despite Unisys's knowledge of what it now claims conclusively establishes Defendants' misconduct.

In fact, despite now claiming that Gilbert cannot be trusted, when Gilbert confirmed his plans to join Atos, ***that same day***, Unisys's COO invited him to leadership meetings at which confidential strategies and plans for the Unisys DWS unit were openly discussed. Ex. G at 143:3-18. Similarly, although Unisys implied in its Complaint that Gilbert had refused to return his Unisys laptop (Compl. ¶ 44), Ms. Davis confirmed that ███████████████████████████████████████████ ██████████. Ex. J at 147:21-148:9. In fact, Unisys was aware that Gilbert planned to return his laptop on February 11 ***before filing*** its Complaint suggesting otherwise. *Id.* at 148:16-25, 149:9-151:7; *see also id.* at 159:18-24, 160:5-161:4, 224:6-15.

Likewise, although Unisys claimed that McGarvey refused to turn over his personal laptop for inspection by Unisys, Ms. Davis testified that ██████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████. Ex. J at 204:7-22, 208:10-13, 211:12-22. Ms. Davis also requested that ████████████ ████████████████████████████████████████████████████████ ████████████████. *Id.* at 198:6-19; Ex. K. And Ms. Davis was not aware of any facts to support Unisys's accusation that McGarvey refused to turn over his BYOC

laptol to her.[7]  *Id.* at 223:3-17.  In fact, Defendants were more than willing to address any questions regarding their conduct had they been asked.  Ex. B at 175:1-12, 247:16-248:6, 316:21-317:4; Ex. H at 51:13-52:6, 91:15-92:5; Ex. L ¶¶ 30-33.

But Unisys approached neither Defendant about its suspicions.  Instead, the evidence adduced during expedited discovery establishes that Unisys intentionally allowed Defendants to leave the company with their devices so Unisys could instigate this litigation to prevent Defendants from working at Atos.  Indeed, despite possessing forensic evidence of Defendants' allegedly improper conduct by at least January 20, 2023 (Ex. G at 162:20-163:9), Unisys kept the employee responsible for Defendants' departure, Ms. Davis, completely in the dark as to its suspicions so that Defendants would not be alerted to Unisys's allegations before leaving.  *See* Ex. J at 105:4-106:9, 108:4-10, 157:21-158:4, 212:13-18.  The only reason to keep the evidence hidden from Defendants would be to ambush them so that they could be used as examples to other Unisys employees.  This conduct is not surprising, as Mr. Thomson told the entire Unisys DWS staff that ███████████████████████████ ████████████  *See* Ex. G at 160:19-162:10.  Those feelings of ███████ have permeated Unisys's accusations against Defendants, resulting in allegations that are long on suspicion and scandal but short on substance.

---

[7] Despite these and other corrections made by Unisys's declarants to the statements in their initial declarations, Unisys submitted identical declarations in support of its renewed request without revising the declarants' incorrect statements.

## **LEGAL STANDARD**

Although available in limited circumstances, it is well-established that "[a] preliminary injunction is an extraordinary remedy [that is] never awarded as of right." *Greenberg v. Haggerty*, 2020 WL 7227251, at *3 (E.D. Pa. Dec. 8, 2020). Instead, to obtain preliminary relief against Defendants under Federal Rule of Civil Procedure 65, Unisys must demonstrate for ***each defendant*** independent of the other that:  (1) Unisys's claims against that specific individual are likely to succeed on the merits; (2) Unisys will suffer irreparable harm if the injunction against that individual is denied; (3) granting preliminary relief will not result in greater harm to that individual than denying it would to Unisys; and (4) the public interest favors such relief.  *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004); *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010).  Unisys must make a "clear showing" that it is entitled to preliminary relief, *Greenberg*, 2020 WL 7227251, at *3, and Unisys's "failure to establish any element . . . renders a preliminary injunction inappropriate." *Freedom Med. Inc. v. Whitman*, 343 F. Supp. 3d 509, 517-18 (E.D. Pa. 2018).

## **ARGUMENT**

The only question before the Court is whether Defendants should be enjoined from working in the field of DWP/DWS at Atos or at any other competitor of Unisys based on Unisys's speculation that Defendants will disclose information that they do

not possess, and without any noncompete agreement to enforce.  Under each of the
required factors, Unisys fails to meet its burden.

**A.    Unisys Fails to Establish a Likelihood of Success on Any Claims for Which It Could Conceivably Suffer Irreparable Harm**

Unisys expends much of its renewed motion on alleged harms caused by
Defendants **in the past**, without establishing any ongoing or threatened disclosure
that would justify the prospective injunctive relief it seeks.[8]  This alone defeats its
motion.  Indeed, it is well established that injunctive relief should issue only for
ongoing or threatened misappropriation of trade secrets or breach of contract, as past
harms are compensable through damages or otherwise cannot be remedied by a
prospective injunction.  *See, e.g.*, *Ecosave Auto.*, 540 F. Supp. 3d at 502 n.1 (no
irreparable harm when no "evidence that any Defendant is currently using or
threatening to use any trade secrets or confidential information"); *ASI Bus. Sols., Inc.
v. Otsuka Am. Pharm., Inc.*, 233 F. Supp. 3d 432, 441 (E.D. Pa. 2017) (same);
*Colorcon, Inc. v. Lewis*, 792 F. Supp. 2d 786, 804-05 (E.D. Pa. 2011) ("'Only when
the threatened harm would impair the court's ability to grant an effective remedy is

---

[8] Although Defendants need not address the validity of Unisys's allegations of past
misconduct, the enforceability of Defendants' employment agreements, or whether
Unisys owns any valid trade secrets that Defendants could have misappropriated
(because it is not necessary to do so), Defendants expressly deny all of Unisys's
allegations.  Defendants also do not address, but expressly deny, Unisys's claims for
alleged improper solicitation of Unisys employees, as those allegations similarly
relate to past conduct that cannot justify injunctive relief.  TRO at 8-9.

17

there really a need for preliminary relief.'" (citation omitted)).

Here, Unisys identifies three grounds for its trade secret claims: (1) Gilbert's transition of documents to his OneDrive that Gilbert neither accessed nor disclosed and to which he no longer has access, TRO at 18; (2) the "thousands" of documents McGarvey allegedly downloaded on his BYOC laptop to which Unisys has not shown any post-employment access or possession, TRO at 19; and (3) Defendants' alleged inevitable disclosure of trade secrets even without documents, TRO at 19-20.  Unisys relies on the same arguments for its breach of contract claims.  *Id.* at 22.

However, as detailed above, Unisys has ***no evidence*** that Defendants currently have access to or possession of the documents outlined in items (1) and (2) such that they could plausibly use or disclose those secrets now or in the future.  *Supra* pp. 4-13.  Indeed, Unisys's own arguments on these points describe ***past conduct***.  TRO at 18-19.  And the evidence shows Gilbert last accessed the documents on his OneDrive and phone in December 2022, before being approached by Atos.  Accordingly, the only remedy for the alleged misappropriation of these documents is, if anything, retrospective relief in the form of damages, not an injunction.

Even assuming Defendants had access to these documents, moreover, ***Unisys knowingly allowed Defendants to depart Unisys without even attempting to prevent the disclosure of the documents***.  *Supra* pp. 13-15.  Not only that, Unisys actively encouraged Gilbert to participate in meetings at which the allegedly

confidential information was discussed.  Ex. G 143:3-18.  Unisys cannot claim irreparable harm from disclosure of purported secrets that it took no steps to prevent Defendants from disclosing.  *See Warner Lambert Co. v. McCrory's Corp.*, 718 F. Supp. 389, 394 (D.N.J. 1989) (finding movant's failure to prevent complained-of conduct "severely undercut[]" claim that it would be irreparably harmed).

The only argument Unisys makes for ongoing or threatened harm from Defendants' conduct is that Defendants will inevitably disclose its trade secrets due to the similarity of their positions at Atos and Unisys, asserting without support that "[Defendants] know Unisys' confidential business strategies and customer information."  TRO at 20.  But this is not what the evidence shows.  For one, as Unisys recognized in its brief, there is no risk of inevitable disclosure when the information from one business is not relevant to the other.  *Id.* at 20 n.6; *see E.R. Squibb & Sons, Inc. v. Hollister, Inc.*, 1991 WL 15296, at *8 (D.N.J. Feb. 5, 1991) (no inevitable disclosure when alleged secrets related to "products [that] are not compatible" with the new employer's products and thus not useful); *Contour Data Sols. v. Gridforce Energy Mgmt.*, 2021 WL 5536266, at *10 (E.D. Pa. Sept. 20, 2021) (no inevitable disclosure when alleged secrets related to system built specifically for former employer).  Just as Unisys claims its business was not relevant to Atos when Defendants came to them, the same is true of Defendants

rejoining Atos only two years later.[9]  As Defendants both explained, the information

on Unisys's business strategies and customer information is not relevant to their

current positions at Atos because Atos provides different products and services to

different customers than Unisys.  *See* Ex. B at 248:16-249:22; Ex. H at 32:20-33:7.

Unisys's  COO  agreed,  stating  that  ███████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████ █ ██████████████████████

██████████████  Ex. G at 179:16-20.

Even if Unisys and Atos did have overlapping products, services, and markets,

moreover, Unisys fails to establish that Defendants have possession of any specific

trade secrets that they could conceivably disclose.  To the contrary, the only evidence

Unisys provides for its assertion that Defendants have knowledge of its trade secrets

is a conclusory paragraph stating that by virtue of their positions "Defendants were

privy to Unisys' proprietary technical documents, design ideas, business strategies,

[and other alleged secrets]" and were also "involved in . . . confidential strategy."

---

[9] Unisys's attempt to apply this reasoning only when Defendants joined Unisys but
not the other way around defies logic.  If the businesses are different, they are
different, regardless of which way Defendants are moving.

[10] The difference in relevant geographic market renders disclosure of secrets related
to the former employer's market not inevitable.  *See ADP, Inc. v. LaCivita*, 2022
WL 5177374, at *5 n.8 (D.N.J. June 30, 2022).

TRO at 4 (citing similarly conclusory statements in Thomson Declaration).[11]   But Defendants' general knowledge gained from their experience at Unisys is not a basis to bar them from their employment at Atos.   As courts in Pennsylvania have long recognized, "[a] man's aptitude, his skill, his dexterity, his manual and mental ability, and such other subjective knowledge as he obtains while in the course of his employment, are not the property of his employer and the right to use and expand these powers remains his property unless curtailed through some restrictive covenant entered into with the employer." *Van Prods. Co. v. Gen. Welding & Fabricating Co.*, 419 Pa. 248, 260 (1965).   Even Unisys's COO acknowledged that Defendants could use their existing knowledge—knowledge that Defendants developed for much longer at Atos before joining Unisys—in their employment with Atos without harming Unisys.   *See* Ex. G at 131:12-132:13 ███████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████ ); *id.* at 132:15-133:4 (same for McGarvey).

As Unisys would have it, Defendants' mere exposure to documents and discussions during their employment automatically renders them in possession of all of the information in those documents and discussions that precludes them from

---

[11] Unisys's reliance on general categories of documents is itself insufficient to justify preliminary relief. *Contour Data Sols.*, 2021 WL 5536266, at *12 (movant's "reliance on general statements and generic references" not sufficient).

joining any Unisys competitor.  But if Unisys truly believed this to be the case, it could and should have paid Defendants additional consideration to restrict their ability to find employment at competitors.  It should have also taken steps to prevent disclosure of any information by Defendants as soon as it had suspicions.  Unisys did neither, and it should not obtain the benefit of a bargain it never made.

Unisys's position also misapprehends the law on inevitable disclosure, which does not give former employers a blanket right to claim that a former employee will use all information ever shown to him.  Instead, the inevitable disclosure doctrine applies only to *specific* secrets in a former employee's possession that the new employer "could not operate or function" without using.  *See First Health Grp. Corp. v. Nat'l Prescription Adm'rs, Inc.*, 155 F. Supp. 2d 194, 236 (M.D. Pa. 2001).  Thus, courts have found no inevitable disclosure when an employee no longer has access to the specific trade secrets and there is no evidence that those secrets are committed to his memory.  *See, e.g., Freedom Med. Inc.*, 343 F. Supp. 3d at 521-22 (former employer could not establish inevitable disclosure of information in documents deleted by former employee); *CentiMark Corp. v. Jacobsen*, 2011 WL 5977668, at *14-15 (W.D. Pa. Nov. 29, 2011) (no inevitable disclosure when no evidence former employee committed alleged secrets to memory).

Such is the case here, as Unisys has no evidence that Defendants have knowledge of specific trade secrets or confidential information.  Because Unisys

cannot show that it is likely to succeed in establishing that Defendants are currently in possession of any information that could constitute Unisys trade secret or confidential information, it cannot establish that Defendants could or are likely to disclose such information at Atos.  There is therefore no ongoing or threatened misappropriation or breach of the confidentiality provisions that could plausibly—let alone clearly—establish that Unisys would be irreparably harmed without an injunction, and Unisys's request for injunctive relief should be denied.[12]

## B. Unisys Fails to Show That the Remaining Factors Favor Preliminary Relief

Although the Court need not consider them, the remaining factors also demonstrate that preliminary relief is improper in this case.

### 1. The Balance of Hardships Does Not Favor Injunctive Relief

The balance of hardships clearly weighs against granting Unisys's motion. Unisys seeks not only to prohibit Gilbert and McGarvey from leading Atos's DWP/DWS division, but also seeks to preclude them from working at *any* Atos affiliate or *any* Unisys competitor in DWS.  TRO at 2.  This in turn would have a serious financial impact on not just Gilbert and McGarvey personally, but also their families.  Ex. M ¶¶ 45-50; Ex. L ¶¶ 39-44.

---

[12] Unisys also fails to show that Defendants have in fact breached the confidentiality provisions, which require the actual "transfer" of confidential information to someone outside of Unisys.  *See* TRO at 3 (reciting language).

Unisys attempts to downplay its anticompetitive injunction by claiming that it only seeks to remove Defendants from positions in the DWS industry.   TRO at 25.   But Unisys ignores that the DWS industry is the sole industry in which Defendants have worked for decades, and in which they have developed specialized skills and experience that has earned them their leadership positions.   Removing them from these positions, even if only for a year, will severely undermine their relevance compared to their peers in DWS—an ever-evolving industry—effectively handicapping them.   By comparison, Defendants do not have access to Unisys documents, have not disclosed documents, and have agreed not to use or disclose Unisys information.  Unisys's COO agreed that if Defendants did not have access to Unisys documents, they ***should not be barred*** from Atos.  Ex. G at 131:12-133:4.

There is therefore no ongoing or future threat of misappropriation or breach of contract that could conceivably harm Unisys, which, compared to the concrete harm to Defendants and their families, clearly weighs against Unisys's requested injunction.  *See, e.g.*, *Schuylkill Valley Sports, Inc. v. Corporate Images Co.*, 2020 WL 3167636, at *17-18 (E.D. Pa. June 15, 2020) (hardships favored denial when plaintiff had not shown irreparable harm while harm to the defendant-employee would be "great as he will once again be without a job and income"); *Mettler-Toledo, Inc. v. Acker*, 908 F. Supp. 240, 248-49 (M.D. Pa. 1995) (equities "clearly support[] denial" when "no protectible" secrets while defendant would lose income).

### 2.    *The Public Interest Does Not Favor Injunctive Relief*

The public interest likewise favors denial of preliminary relief.  There is no risk of misappropriation or breach of contract here that would justify the public's interest in the particular relief Unisys is requesting.  By comparison, courts in the Third Circuit have recognized a strong public interest in promoting free competition between companies and the right of employees to change employment.  *See, e.g.*, *Schuylkill Valley*, 2020 WL 3167636, at *19 ("[T]he public interest in preserving competition weighs in favor of denying the injunction that would significantly limit CI's ability to compete"); *Colorcon, Inc.*, 792 F. Supp. 2d at 805 (contrary "to the public interest to . . . require [plaintiff] to work at a job that does not suit her talents").  The public interest therefore disfavors an injunction here.

### C.    **Unisys Should Be Required to Post Bond for Any Injunction**

As detailed in Defendants' opposition to Unisys's TRO, Federal Rule of Civil Procedure 65(c) generally requires the posting of bond in the amount of any damages likely to be sustained by the wrongly enjoined party.  *See* TRO Opp., Dkt. 24 (citing *NCAA v. Gov. of N.J.*, 939 F.3d 597, 606-07 (3d Cir. 2019)).  Thus, to the extent the Court enters an injunction, it should at a minimum require a bond in the amount of Defendants' combined lost wages for the duration of the injunction, plus interest.

### <u>CONCLUSION</u>

For these reasons, Unisys's TRO and preliminary injunction should be denied.

Dated: March 8, 2023

**DEFENDANTS LEON GILBERT AND MICHAEL MCGARVEY**

*/s/ Brian C. Riopelle*

Gerald J. Stubenhofer, Jr.(PA Bar No. 72921)
Cameron J. Comer (PA Bar No. 329152)
260 Forbes Avenue, Suite 1800
Pittsburgh, Pennsylvania 15222
Tel: 412 667 6000
Fax: 412 667 6050
gstubenhofer@mcguirewoods.com
ccomer@mcguirewoods.com

Brian C. Riopelle (*Admitted pro hac vice*)
Christopher M. Michalik (*Admitted pro hac vice*)
Dana Rust (*Admitted pro hac vice*)
Amanda L. DeFord (*Admitted pro hac vice*)
George B. Davis (*Admitted pro hac vice*)
Matthew G. Rosendahl (*Admitted pro hac vice*)
MCGUIREWOODS LLP
800 East Canal Street
Gateway Plaza
Richmond, VA 23219
Tel: (804) 775-1000
Fax: (804) 775-1061
briopelle@mcguirewoods.com
cmichalik@mcguirewoods.com
drust@mcguirewoods.com
adeford@mcguirewoods.com
gdavis@mcguirewoods.com
mrosendahl@mcguirewoods.com

*Attorneys for Defendants Leon Gilbert and Michael McGarvey*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system on this 8th day of March, 2023, which constitutes service on Plaintiff's counsel of record, who are registered users of the CM/ECF system pursuant to Fed. R. Civ. P. 5(b)(2)(E).


*/s/Gerald J. Stubenhofer, Jr.*