**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Unisys Corporation, | Civil Action No. 2:23-CV-00555-PD |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| vs. | |
| Leon Gilbert, Michael McGarvey, Atos SE, and Atos IT Solutions and Services, Inc., | |
| Defendants. | |

## First Amended Complaint

1.     Plaintiff Unisys Corporation ("Unisys") alleges as follows against Defendants Leon Gilbert ("Gilbert"), Michael McGarvey ("McGarvey") (together, "Atos Employee Defendants"), Atos SE, and Atos IT Solutions and Services, Inc. ("Atos IT") (unless specified otherwise, Atos SE together with Atos IT, "Atos") (Atos, together with Atos Employee Defendants, "Defendants") based on information currently available to Unisys.

## Introduction

2.     Unisys filed the original complaint and application for a temporary restraining order ("TRO") in this case to protect its substantial investment, through years of hard work and hundreds of millions of dollars, in industry-leading innovations in Digital Workplace Solutions ("DWS"), from a theft that, if left

unchecked, threatened to fundamentally undermine that investment.  In connection with Unisys' TRO, the Court ordered expedited discovery, which not only confirmed the theft that Unisys' original complaint described, but it also revealed that the theft—and the attempted cover up—was far worse and wider in scope than Unisys initially thought.   Specifically, expedited discovery has confirmed Atos' direct participation in the misappropriation that led Unisys to file the original complaint. Atos, through the unlawful actions of Atos Employee Defendants (while employed by Atos) knowingly received confidential Unisys information in furtherance of their employment and the actions of other senior Atos employees. Atos knew about plans to lie to Unisys in an effort to avoid legal liability in connection with Atos Employee Defendants coming to work for Atos. And Atos has done nothing to curtail the responsibilities or employment of Atos Employee Defendants despite significant evidence of misappropriation and other unlawful conduct.

3.      Unisys' DWS business delivers advanced workplace solutions to help clients transform their digital workplaces and create exceptional end-user experiences by providing the tools, solutions and services that enable a company's workforce to work securely from anywhere, anytime on any device. Unisys set out to transform its DWS business unit in 2020 to differentiate Unisys in the marketplace.  To do so, Unisys spent hundreds of millions of dollars acquiring companies that provided critical technologies for DWS and investing in its own

proprietary technologies.  The result was a transformation of Unisys' DWS platform from a reactive services structure to a proactive experience that provides insight into how to increase productivity gains in a client's associate base.  As part of that investment, Unisys hired Gilbert, McGarvey, and others at the beginning of 2021 to lead Unisys' DWS business unit during this transformation, with the full support and investment of the company.

4.    Throughout their time at Unisys, Gilbert and McGarvey worked side-by-side to run the DWS business unit.  Unisys entrusted Gilbert and McGarvey—who signed agreements related to the confidential nature of their work—with Unisys' confidential information concerning highly sensitive and proprietary technologies, products and services, and related business matters.  They were privy to Unisys' proprietary technical documents, design ideas, business strategies, customer lists and strategies, pricing, product planning, cost management, design guidelines, and research and development ("R&D") efforts while employed at Unisys.  Gilbert and McGarvey had access to Unisys confidential documents stored on the company's internal DWS SharePoint sites, which are internal data share sites used by employees to share documents and other information amongst themselves. Gilbert and McGarvey were also intimately involved in confidential work developing and implementing the strategy for the DWS business unit itself.  They

were also involved in confidential discussions at the highest executive level, including those related to Unisys' confidential company-wide strategies.

5.    Despite the significant company resources dedicated to Atos Employee Defendants' DWS work for Unisys over the years, in early January 2023, Gilbert and McGarvey announced to Unisys that they were leaving the company to work for Atos in its competing DWS business.   Gilbert claims he left at the behest of Atos's CEO,  Nourdine Bihmane, who reached out to Gilbert in December 2022.  It did not take Gilbert long to violate his non-agreements with Unisys, identifying to Atos HR in late December three Unisys employees he wanted to bring with him to Atos, with specific salary information and details about work skills.  Gilbert also made clear that one of the individuals "would almost guarantee a long-term renewal of [a customer] contract."

6.    All three of the employees Gilbert solicited have now joined Atos, including former Unisys employee Bogdan Udrea, who told Unisys he was taking a Microsoft job. And Gilbert admitted that the Unisys employees that he solicited planned to lie to Unisys about the circumstances of their Atos recruitment "to avoid potential legal issues around soliciting." Gilbert admitted that he and Atos' CEO Nourdine Bihmane were aware that McGarvey and others would lie about their Unisys departures and that Gilbert was "on board with someone lying to avoid … the    potential    for    a    dispute    about    the    legal    consequences    [of    their

actions.]" Moreover, Gilbert has not limited his recruitment to those three individuals: Gilbert messaged a senior Unisys leader stating "[y]ou know I will take you" "[a]ssuming you want to," despite the non-solicitation provisions in his agreement. Ex. 3.

7.    As Unisys later discovered, neither Gilbert nor McGarvey were not leaving empty-handed.  Although both Gilbert and McGarvey flatly denied having any confidential Unisys information in their possession during their exit interviews, the forensic evidence and their own sworn testimony proves the opposite was true. Gilbert and McGarvey left with thousands of confidential Unisys documents that disclose critical business strategies and technologies and a plan to use Unisys' trade secrets in their work for Atos, which was trying to revamp its failing DWS business.

8.    Gilbert and McGarvey were also untruthful with Unisys when they left, with both denying that they had taken Unisys confidential information with them. The Court-ordered expedited discovery proved otherwise.  As for Gilbert, although he denied taking anything more than personal records and "templates" from Unisys in his sworn declaration, Gilbert admitted at his deposition that he exfiltrated over 200 Unisys documents, that bore labels such as "Highly Confidential" and "Internal Use Only," and contained some of Unisys' most sensitive and confidential information, through his personal OneDrive account and uploaded them to Atos' internal system. Atos' production confirmed that these documents—including

Unisys' confidential, forward-looking business strategies, financial information, and more—are in Atos' possession to this day. Though he initially tried to deny it, Gilbert ultimately was forced to admit that documents he took relate to Unisys' DWS business and contain Unisys confidential information which Unisys would not want Atos to have.

9.     Around December 26, 2022, McGarvey was approached by Gilbert concerning moving to Atos. McGarvey was subsequently contacted by Atos, which shortly thereafter sent him a formal and finalized offer of employment on January 5, 2023, which McGarvey accepted. After being chosen by Gilbert to go to Atos with him but long before announcing his departure, McGarvey surreptitiously downloaded 13,000 confidential documents from a confidential DWS SharePoint site to his personal laptop between January 4 and 5, 2023.

10.    McGarvey had no answer for the forensic evidence proving that he downloaded thousands of confidential Unisys documents to his personal laptop before he told anyone at Unisys he was leaving for Atos. So instead of owning up to his actions, McGarvey destroyed evidence and crafted a cover story that is irreconcilable with the forensic evidence. Specifically, McGarvey claims that he "wiped" his personal laptop (which he used for work at Unisys) on three different occasions, January 27, February 5, and February 14. The forensic evidence, however, demonstrates that McGarvey did not wipe his laptop, as he claims, on

January 27 or February 5.  Rather, McGarvey had these thousands of stolen Unisys materials in his possession when he joined Atos as CTO on February 6, 2023.  He did not allegedly wipe his laptop until February 14, a week into his tenure at Atos, after he found out about the filing of the original complaint in this lawsuit—and all the while having access to numerous personal cloud storage accounts and USB storage drives onto which he could have copied those Unisys documents.

11.    Atos was well aware of the Atos Employee Defendants' plan to bring Unisys trade secrets and confidential information with them.  Before leaving Unisys, Gilbert touted his ability to use Unisys' confidential strategy to help Atos achieve its goals, telling an Atos Senior Vice President that he "spent [the] last 2 years in the model Atos is trying to get to, so [he] know[s] what works and doesn't.  Have to now show Nourdine [Atos' CEO] the same," plainly showing his willingness to disclose Unisys' trade secrets.  *See* Ex. 18.  Expedited discovery confirmed that Gilbert made good on his promise to "show" Atos's CEO the Unisys model.  McGarvey did the same, touting his knowledge of Unisys's business plans and model to a fellow Atos employee.  At Atos, Gilbert has encouraged other former Unisys (and now Atos) employees to likewise share their confidential Unisys information.

12.    Atos Employee Defendants' misappropriation fundamentally violates the trust that Unisys placed in them as high-ranking Unisys employees.  Unisys

undertakes substantial measures to ensure that its highly confidential information remains secret and is not misused, including by restricting access to only certain employees who need such information and through numerous other measures. Unisys requires employees, including Atos Employee Defendants, to acknowledge their understanding of the confidentiality requirements through agreements and company policy, which Unisys expressly incorporates by reference. *See* Exs. 1, 2.

13.    Atos knows the information it misappropriated is highly confidential and would cause great harm to Unisys if in Atos's hands, and yet Atos continues to allow the Atos Employee Defendants to be employed in their senior positions at Atos.  Additionally, Unisys filed the initial lawsuit on February 13, 2023, and in addition to serving the Atos Employee Defendants the complaint, Unisys notified Atos of the lawsuit.  Additionally, Unisys served Atos with a subpoena on February 23, 2023 with requests for production, to which Atos responded on February 27, 2023 along with a production that included Unisys confidential and trade secret documents with metadata information indicating that they were uploaded to Atos' computer network by Gilbert.  Atos has therefore been aware of Unisys' trade secret claims and significant evidence indicating that a substantial theft occurred, yet Atos nevertheless has done nothing to change or restrict the role of Atos Employee Defendants, who continue to lead Atos' competing DWP business without other restrictions.  Specifically, despite the unlawful conduct that has come to light, Atos

Employee Defendants continue to work at Atos in substantially similar roles as when they were at Unisys, and Atos has not restricted their access to workspaces or clients for which they may continue to use or disclose Unisys' confidential information and trade secrets.

14.    Despite substantial evidence of their theft and cover up, Defendants have not taken responsibility. As Gilbert stated, he does not believe he has done anything wrong and would take the same actions in the future. Even beyond the evidence of actual theft, Defendants' efforts to destroy and conceal evidence, and then make inaccurate statements about it, shows they cannot be trusted, and present a great threat to Unisys in their current Atos positions.

15.    Defendants' improper acquisition, disclosure and use of confidential and trade secret Unisys information while at Atos demonstrates concerted activity among Defendants to steal and use Unisys' trade secrets at Atos.  The improper actions involving Atos Employee Defendants and other senior Atos employees were conducted substantially within the temporal and spatial scope of their employment at Atos to further the purpose for which they were hired at Atos—to revive a failing DWP unit by using Unisys' confidential and trade secret information.  Unisys files this First Amended Complaint and seeks immediate injunctive relief to stanch the irreparable harm that has and will continue to occur from Defendants' use of Unisys' trade secrets in their employment at Atos.

**The Parties**

16.    Unisys is a Delaware corporation that maintains its corporate headquarters and principal place of business at 801 Lakeview Drive, Blue Bell, Pennsylvania 19422.

17.    Gilbert is an adult individual who, upon information and belief, resides in Prospect, Kentucky.  During his employment with Unisys, Gilbert was a Senior Vice President and General Manager for DWS and a member of the Unisys Executive Leadership Team.  Gilbert's LinkedIn page lists his position and role as with "Atos" and not any specific subsidiary or business group, and also points to the global Atos website (atos.net).[1]

18.    McGarvey is an adult individual who, upon information and belief, resides in South Abington, Pennsylvania.  During his employment with Unisys, McGarvey was Vice President of Solution Management, DWS.  McGarvey's biography page on the Atos website lists his position and role as with "Atos" and not any specific subsidiary or business group.[2]

19.    Atos IT Solutions and Services, Inc. is a Delaware corporation with its principal place of business at 2500 Westchester Avenue, Suite 300, Purchase, New

---

[1]    https://www.linkedin.com/in/leon-gilbert-b1159a2/

[2]    https://atos.net/en/expert/mike-mcgarvey

York, 10577.  Atos is registered in Pennsylvania as an active Foreign Business Corporation, and is a wholly-owned subsidiary of Atos SE.

20.    Atos SE is a public limited company (société européenne) incorporated under French law, with a registered office located at 80, Quai Voltaire, 95870 Bezons, France.  Atos SE owns 100% of Atos IT and has 100% of control of Atos IT in the United States according to its two most recent publicly-available Annual Financial Reports.[3]

21.    Atos describes itself on its "North America" "who we are" webpage as a worldwide entity with 112,000 employees in 71 countries and eleven billion dollars in annual worldwide revenue.[4]  Atos' financial reporting describes revenue by region and technology and service group, not by subsidiary, including for the DWP business at issue in this case.[5]  Atos has common officers and directors, including across Atos

---

[3]    *2020 Annual Financial Report*, Atos, 93 https://atos.net/content/investors-documents/2021/atos-2020-annual-financial-report.pdf;  *Universal Registration Document 2021 (including the 2021 financial report)*, Atos, 360, https://atos.net/content/investors-documents/2022/atos-2021-universal-registration-document.pdf.

[4]    https://atos.net/en-na/north-america

[5]    *See Integrated Report, 2021*, at 7 and 30 https://atos.net/content/investors-documents/ir-2021/atos-integrated-report-2021-en.pdf;

SE and Atos IT.[6]    The "Group Executive Board" at Atos was established in February 2022 "to develop and execute the Group strategy and to ensure value is delivered to clients, shareholders, partners, and employees" and is "in charge of the Global Management Committee which includes heads of departments" including the Americas.  *Id.*  Atos maintains a unified marketing image, including at least in its trademarks and logos used on its global and North America website.[7]

22.    Nourdine Bihmane's public LinkedIn page identifies himself as the CEO of "Atos" and not any specific subsidiary or business group.[8]

### Jurisdiction and Venue

23.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 because this action arises out of the violation of a federal law, the Defend Trade Secrets Act, 18 U.S.C. §§ 1831, *et seq*.

24.    This Court also has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367(a) because the federal and state law claims derive from a common nucleus of operative facts.

---

[6]    *Integrated Report 2021*, Atos, 37, https://atos.net/content/investors-documents/ir-2021/atos-integrated-report-2021-en.pdf (last visited Mar. 8, 2023).

[7]    *See North America*, Atos, https://atos.net/en-na/north-america; *Global*, Atos, https://atos.net/en/.

[8]    https://www.linkedin.com/in/nbihmane/?originalSubdomain=fr

25.    This Court has personal jurisdiction over Gilbert.    Gilbert's compensation agreements with Unisys expressly provide that Gilbert submits to and consents to the exclusive jurisdiction of this Court. *See* Exs. 3–4 §§ 20–21; Exs. 5–6 §§ 21–22; Exs. 7–10 §§ 20–21.

26.    This Court has personal jurisdiction over McGarvey.    McGarvey's compensation agreements with Unisys expressly provide that McGarvey submits to and consents to the exclusive jurisdiction of this Court. *See* Exs. 11–13 §§ 20–21.

27.    Additionally, this Court has personal jurisdiction over McGarvey because he resides in South Abington, Pennsylvania.

28.    This Court has personal jurisdiction over Atos IT Solutions and Services, Inc. based on Atos' trade secret misappropriation and tortious interference with contracts described in this Complaint, including Atos' recruitment and employment of one of the Atos Employee Defendants (McGarvey) who resides in Pennsylvania and has submitted to jurisdiction here while McGarvey engaged in misappropriation in connection with and in furtherance of his employment at Atos.

29.    This Court has personal jurisdiction over Atos SE, including based on Atos SE's purposeful availment of and connections with Pennsylvania that relate directly to and form the basis of the trade secret misappropriation and tortious interference with contracts claims described in this Complaint, including involvement by senior Atos SE executives, including Nourdine Bihmane, of

solicitation of one of the Atos Employee Defendants (McGarvey) who resides and works for and on behalf of Atos SE's worldwide DWP business in Pennsylvania, and who has submitted to jurisdiction here (in addition to the other Atos Employee Defendant (Gilbert) who likewise submitted to jurisdiction here and who reports to the Atos SE CEO and runs the global, worldwide DWP business for Atos SE); the knowledge and/or involvement of senior Atos SE executives including at least Mr. Bihmane with a plan to misrepresent aspects of that recruitment to Unisys in an attempt to avoid legal liability associated therewith; receipt by at least a senior Atos SE executive of confidential Unisys information from Mr. McGarvey while Mr. McGarvey worked for Atos in Pennsylvania, in connection with and in furtherance of his employment at Atos for the benefit of Atos SE's worldwide DWP business. Additionally, Atos SE is the alter ego of Atos IT based on Atos SE's 100% ownership of Atos IT, 100% control over Atos IT, the actual exercise of control over Atos IT, common officers, common marketing image, common use of trademarks and logos, the organizational structure, performance of functions, and public's perception of Atos, such that there is also personal jurisdiction over Atos SE for this additional reason also. Additionally, and in the alternative, the Court has personal jurisdiction over Atos SE based on Federal Rule of Civil Procedure 4(k)(2) and Atos' acts described in this First Amended Complaint, including acts of misappropriation

perpetrated by senior executives in Atos's worldwide DWP business throughout the United States.

30.     Venue is proper in this Court under 28 U.S.C. § 1391 because Atos Employee Defendants contractually agreed to submit themselves to venue in this Court in the event of any legal dispute between Unisys and each of them in their respective compensation agreements.  *See* Exs. 3–4 §§ 20–21; Exs. 5–6 §§ 21–22; Exs. 7–10 §§ 20–21. Venue is further proper in this Court over Atos pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this district, and a substantial part of the property that is the subject of the action—namely Unisys' trade secrets—is situated at Unisys' corporate headquarters at 801 Lakeview Drive, Blue Bell, Pennsylvania 19422. Venue is also proper in this Court over Atos pursuant to 28 U.S.C. § 1391(b)(3) in the event that there is an argument that no other sub-section of § 1391(b) applies because Atos Employee Defendants are subject to personal jurisdiction in the Eastern District of Pennsylvania as alleged above.

31.     Based on Defendants' conduct, it was wholly foreseeable that they would be bound by the Atos Employee Defendants' compensation agreements' jurisdiction and venue provisions and subject to a suit in the Eastern District of Pennsylvania.

**Additional Factual Allegations**

**A. Unisys' Trade Secrets Are Critical to Its Business and Success**

32.    Headquartered in Blue Bell, Pennsylvania, Unisys is a global technology solutions company.  Unisys' offerings include digital workplace solutions, cloud and infrastructure solutions, enterprise computing solutions and business process solutions, and its customers include many Fortune 500 companies. Its reliable and high-quality solutions are the result of significant investment of time and resources, and Unisys invests heavily to support its engineering and business teams' creation of industry leading technologies and related products and services. Unisys relies on its trade secrets to guard the intellectual property created by its investment in the ingenuity and industry of its employees.

33.    As a result of substantial investments and years of innovation, significant aspects of Unisys' offerings are highly confidential and maintained in strict confidence as trade secrets to protect the substantial investment made to develop them.  This confidential information derives considerable value from not being publicly known outside of Unisys, because of the competitive advantage, among other things, that the secret nature of the information confers on Unisys from both a technological and business perspective.

34.    Unisys' DWS business unit allows customers to provide their workforce with the tools, solutions and services that their employees need to work

securely and effectively.  As part of that product offering, Unisys empowers the hybrid workplace and workforce by designing smarter, innovative workspaces that create seamless, digital experiences securely.

35.    Unisys has developed proprietary DWS which provide proactive, personalized technology and support services to elevate a customer's digital workplace experience without compromising compliance or security.  Unisys has invested a tremendous amount of time and resources into its research and development of its solutions and has created many confidential documents reflecting the research and development process and results.  These documents contain, as an example, architecture designs (including integration information), configurations and technical specifications for customers, presentations, and training tools.

36.    Further, Unisys has invested significant resources into its confidential and proprietary business strategy information.  For instance, Unisys has accumulated years of proprietary strategies that are critical to the company's success in the marketplace and future plans.  This includes, for example, confidential documents regarding Unisys' cost and pricing strategy, investments, partnerships, product roadmaps and projections, goals and plans for revenue growth and market power, product development, potential acquisition plans, workforce plans, and sales positioning information.  Such confidential information represents Unisys' years of experience and associated investment.

37.    The thousands of Unisys proprietary documents that McGarvey downloaded to his personal laptop contain Unisys' confidential trade secrets.  The confidential and proprietary documents that McGarvey unlawfully acquired include:

- Unisys business strategies that cover plans for growth, product optimization, and improved market recognition over the course of several years for Unisys' DWS, Cloud Applications & Infrastructure ("CA&I") and Enterprise Computing Solutions ("ECS") business segments;

- architecture design for building Unisys' communications platform as well as internal presentations that discuss the same;

- client contracts with confidential pricing information, statement of works, client workshops and oral presentations, and information related to current pursuits;

- roadmaps and technical specifications related to a proprietary employee-related program; and

- presentations, training tools, architecture designs, and sales positioning information for Unisys products.

38.    These exemplary confidential materials that McGarvey unlawfully downloaded to his personal laptop are the result of many years accumulation of Unisys' technology development and business acumen, are kept strictly confidential by Unisys, and are critical to Unisys' success in the marketplace, including as a result of its secret and proprietary nature.  Unisys' efforts and investments to develop this information and technology over the years has resulted in substantial trade secrets that, together with other Unisys intellectual property, have made Unisys a market leader.  For these reasons and others, Unisys' digital workplace technologies and the

secret design, testing, and implementation of its proprietary features and processes are highly valuable assets belonging to Unisys.

**B. Unisys Protects Its Trade Secrets**

39.    The measures that Unisys has taken to protect the secrecy of its confidential and proprietary information are extensive.  As an example, Unisys has a Confidentiality Policy (Ex. 14) that protects Unisys' confidential and proprietary information.  Employees agree to and are trained on this policy.

40.    Additionally, Unisys' Code of Ethics and Business Conduct (Ex. 15) provides clear instruction to its employees on handling and maintaining the secrecy of its confidential information, trade secrets, and intellectual property, and employees agree to and are trained on this policy as well:



## CONFIDENTIAL INFORMATION
### AND INTELLECTUAL PROPERTY

Unisys information, trade secrets and intellectual property are valuable assets that demand protection. We could lose our competitive advantage if our confidential information is disclosed outside of the company. We must also respect the confidential information and intellectual property of others. This includes protecting information our business partners share with us. Safeguarding information and ideas, whether our own or those of others, is crucial to our business success and our reputation as a trusted partner.

**Associates must:**

- Never discuss confidential information in public spaces and share it only with those who are authorized or need to know it.
- Use confidential information only for Unisys business, and maintain confidentiality even when your employment with Unisys ends.
- Secure Unisys intellectual property rights through copyrights, trademarks and other forms of intellectual property to protect the value of our innovation.
- Protect confidential information by using correct classification, encryption and other methods.
- Do not solicit or use the confidential information or intellectual property of others without license or permission.

41.    Unisys employees are also required to sign its Employee Proprietary Information, Invention and Non-Competition Agreement ("Proprietary Information/Non-Compete Agreement"), which, among other things, states that employees will not "transfer, or allow to be transferred, any of the Company's proprietary data or information" or "solicit or attempt to influence any employee or Unisys to terminate his or her employment with Unisys." Exs. 1–2 §§ 1, 6. Both Gilbert and McGarvey signed these agreements.

42.    Additionally, Gilbert's and McGarvey's stock and cash grants are governed by agreements ("Compensation Agreements") under which they agreed to keep company information confidential. Exs. 3–4 § 10; Exs. 5–6 § 11; Exs. 7–13 § 10.

43.    Further, Unisys' DWS SharePoint sites store highly sensitive documents that contain confidential information regarding Unisys' proprietary technologies, design ideas, customer lists and strategies, pricing, product planning, cost management, design guidelines, research and development efforts, and other trade secrets. Unisys takes reasonable steps to maintain the secrecy of the contents of the documents stored on the Unisys SharePoint sites. The Unisys SharePoint sites are not accessible to the public. All access to the Unisys SharePoint sites requires authorization. Communication between a user's web browser and the Unisys SharePoint sites is also encrypted to prevent eavesdropping and interception.

44.    Moreover, access to any specific portions of the Unisys SharePoint sites is limited according to the job responsibilities of each individual user.  That is, the documents stored on the Unisys SharePoint sites are not generally available to all Unisys employees.  Rather, individual employees must be expressly and individually granted access to specific portions of the Unisys SharePoint sites.

## C. Atos Needed Unisys to Compete

45.    Like Unisys, Atos offers DWS products and services, and Unisys and Atos often compete to serve the same customers.  Atos differs from Unisys in its commitment to R&D and its DWS business.  In or around 2020, Atos stopped investing in the growth of its DWS business, preferring instead to try to maintain what it had and change its focus to cloud services.  In 2021, Atos saw a drop in revenue (even though IT services were growing), and blamed that decline on its classic IT business, which encompassed digital workplaces.  At the beginning of 2022, the company issued a profit warning.  According to Atos, its digital workplace division would need to be the subject of an "ambitious turnaround."  Ex. 17.

46.    Unisys figured in Atos' attempted turnaround.  As noted above, around October/November 2022, the Defendants put the wheels in motion for Gilbert to join Atos and take a team from Unisys (who brought thousands of downloaded trade secret documents with them) along with him.  In December 2022, Gilbert claims that Atos CEO Nourdine Bihmane reached out to him about leaving Unisys to work at

Atos to lead its competing DWP business. Around December 26, 2022, Gilbert told Amy Brown, Deputy Global Head of Human Resources at Atos, precisely which Unisys employees he wanted to solicit to join him at Atos, along with their confidential Unisys compensation information and the value that he said they would add to Atos." For example, Gilbert stated that one of those Unisys employees would almost guarantee a long-term renewal of a particular customer contract with Atos. Around the same time, and conspicuously before announcing his impending departure from Unisys, Gilbert surreptitiously copied hundreds of Unisys documents—bearing labels such as "Highly Confidential" and "Internal Use Only" and containing highly sensitive confidential Unisys information which Gilbert acknowledged Unisys would not want a competitor to have—from the Unisys network to his personal cloud storage account to secretly take them with him to use in his employment at Atos. Gilbert signed an employment agreement with Atos on January 5, 2023.

47.    There was no legitimate, job-related purpose for Gilbert to upload these confidential Unisys materials to his personal OneDrive. Although Gilbert claimed, in his sworn declaration, that the only information he transferred was "personal records" and files he "thought could provide useful templates," Dkt. 24-2 ¶ 13, Gilbert has now admitted that he took those Unisys documents to bring with him to Atos to use in connection with his employment there, in direct breach of the

confidentiality obligations that Gilbert agreed to in the Proprietary Information/Non-Compete Agreement and elsewhere as alleged herein. Indeed, Gilbert uploaded the confidential Unisys materials from his personal OneDrive account to the Atos computer system. In an effort to cover his tracks, immediately upon learning of this lawsuit, Gilbert moved the hundreds of Unisys documents that he had uploaded to the Atos computer system to a "recycle bin" where he expected they would ultimately be deleted. Gilbert's plan to avoid detection was foiled, however, when Atos produced those same materials from the "recycle bin" in response to a subpoena during expedited discovery.

48.     As noted above, before announcing his departure to Unisys, on January 4–5, 2023, McGarvey downloaded approximately 13,000 confidential Unisys files to his personal laptop, including highly confidential and proprietary files concerning a number of critically important technical and business matters, such as product architectures, customer agreements including prices and features, business plans such as potential acquisitions and mergers, and future product developments. Based on McGarvey's computer browsing history, Unisys believes that McGarvey signed an agreement with Atos on January 5.

49.     There was no legitimate, job-related purpose for McGarvey to download this immense quantity of confidential Unisys documents to his personal computer. And it was completely divergent from McGarvey's past practices. For

example, in the three months prior to January 4, 2023, McGarvey had downloaded less than 100 documents from the Unisys SharePoint sites, whereas he downloaded 130 times that volume over a two-day period, five days before announcing his departure to Unisys.  On January 10, 2023, McGarvey signed a performance and share agreement with Atos.  Then, in an attempt to cover his tracks, on January 12, 2023, McGarvey deleted 7,000 of the documents he downloaded to his personal laptop from his Unisys OneDrive.  Unisys OneDrive is similar to SharePoint and allows employees to internally store and access documents in a server instead of on their computers.

50.    Around the same time, Gilbert directly solicited a Unisys executive to join him at Atos.  On January 11, 2023, after attending a leadership meeting, Gilbert sent a WhatsApp message to a member of Unisys' senior leadership team stating that "[y]ou know I will take you" "[a]ssuming you want to," despite the existence of non-solicitation provisions in Gilbert's compensation agreements and in Unisys' policies prohibiting this very conduct.  *See* Ex. 16.

51.    The next week, Gilbert deleted many emails and wiped his Chrome browser history.  In addition, on January 22, 2023, Gilbert accessed his Google Drive at least twenty times over a twenty-five-minute period, which appeared to be an unusual level of activity not related to his normal course of business.  Unisys' policy

is to use Microsoft One Drive for cloud storage, and not Google Drive.  Unisys does not use Google Drive for any reason in its normal business operations.

52.    Gilbert held several calls with Atos employees in his last week at Unisys, and began messaging Atos Senior Vice President Hansjorg Walz through Microsoft Teams messages.  During his January 19, 2023 conversation with Walz, Gilbert outlined his vision for the groups in the DWS division at Atos.  During the same conversation, Walz provided Gilbert with a draft organization structure, which included three other Unisys employees.  Gilbert then made clear to Walz that he would use his knowledge from Unisys to push Atos forward, stating that he "spent [the] last 2 years in the model Atos is trying to get to, so [he] know[s] what works and doesn't.  Have to now show Nourdine the same."  Walz responded with "indeed."  *See* Ex. 18.

53.    Gilbert and McGarvey disclosed none of this during their exit interviews.  Instead, they told coordinated stories, blaming Unisys leadership for their departures and claiming that Unisys had failed to acquire any companies for them—which was untrue, given that Unisys purchased *two* companies for DWS while it was helmed by Gilbert and McGarvey.  They also indicated that they were unhappy with their compensation at Unisys, and that taking a position at Atos would be far more lucrative.

54.     During his exit interview, Gilbert was asked if he had retained any confidential Unisys materials.  Gilbert falsely denied doing so, despite the fact that he had secretly uploaded hundreds of confidential Unisys documents to his personal OneDrive account to bring with him to Atos.

55.     Like Gilbert, McGarvey also denied during his exit interview downloading Unisys confidential documents to his personal laptop.  He was asked multiple times during his exit interview whether he had downloaded Unisys documents and each time replied that he had not, and in fact, there was nothing at Unisys he would want.  McGarvey also refused to acknowledge requests by Unisys to provide his personal laptop for inspection, to ensure it did not contain Unisys confidential information.

**D. Defendants Have Misappropriated Unisys' Trade Secrets**

56.     As explained above, Gilbert and McGarvey have a duty to maintain Unisys' trade secret information in confidence, and Defendants collectively have an obligation not to acquire, disclose or use Unisys' trade secret confidential information at Atos.    They breached that duty by actual and threatened misappropriation of Unisys' trade secrets.

57.     As Unisys' Senior Vice President and General Manager for DWS, Gilbert was in charge of (and ultimately accountable for) the decisions in the DWS business unit.  He served as a member of Unisys' Executive Leadership Team, and

was involved in Unisys' most confidential strategies to drive profitability, growth, and DWS innovation at Unisys, including with respect to acquisitions.  He was also involved in confidential sales strategies for clients and market delivery of DWS solutions, and led the vision and business decisions for the DWS business unit.  As a member of Unisys' Executive Leadership Team, Gilbert had a front row seat to Unisys' confidential business strategies.

58.    McGarvey worked closely under Gilbert at Unisys.  He was involved in confidential strategy meetings to drive profitability, growth, and DWS innovation at Unisys.  For example, McGarvey would evaluate the DWS market, analyze what offerings Unisys should provide in the future based on demand, and engage in portfolio management.  Whether Unisys' DWS offerings should include certain features was a decision within McGarvey's realm.  With Gilbert, McGarvey helped to shape the roadmap for the DWS business and was in charge of DWS development at Unisys.  In other words, Defendants were heavily exposed to, and involved with, Unisys' confidential DWS playbook.

59.    Defendants also had extensive access to Unisys' confidential and proprietary business strategy and related technical information.  This includes, for example, confidential documents regarding Unisys' cost and pricing strategy, investments, partnerships, product roadmaps and projections, goals and plans for revenue growth and market power, product development, potential acquisition plans,

and workforce plans.  Gilbert, for instance, was in charge of presenting the 2022 Digital Workplace Solutions PowerPoint (one of Unisys' documents accessed and unlawfully misappropriated) that summarizes the cost information for Unisys' products and projects, as well as projects under development.  As explained above, Gilbert is contractually obligated to maintain the confidentiality of this information. Yet Gilbert copied hundreds of Unisys documents, bearing labels such as "Highly Confidential" and "Internal Use Only" and containing highly confidential and sensitive Unisys information such as going forward strategy presentations to the Board and executive management, as well as confidential financial information and projections and plans related to Unisys's business with numerous specific clients.

60.    Further, as explained above, the 13,000 files McGarvey illicitly downloaded reflect this valuable, confidential information, such as client contracts, product architecture and designs, future business plans, and planned costs and projected profits.  For example, one of the documents, authored in 2022 by Gilbert, contains confidential long-term revenue and profit margin projections for Unisys' DWS business unit and describes specific confidential aspects of Unisys' strategic plan to allocate investments and resources to more effectively compete against its primary competitors, including Atos.  As another example, several downloaded documents include hiring and workforce plans, including technical implementation details.  Other documents include information related to Unisys' investigation into

the market landscape for prospective acquisitions and joint partnerships for future product development. Additionally, several downloaded documents include confidential information related to the architecture design for Unisys' communications platform as well as internal presentations that discuss the integration of Unify Square with Unisys. McGarvey also took customer contracts with confidential pricing information, statement of works, customer workshops and oral presentations, and information related to Unisys' current pursuits. Such information, if revealed publicly or provided to a competitor such as Atos, would severely undermine Unisys' competitive position.

61.     Gilbert and McGarvey's misappropriation did not stop at their departures. At Atos, Gilbert and McGarvey helm the global Digital Workplace business and report to Atos' CEO, while using Unisys' trade secrets and confidential information to do so, as alleged above.

## COUNT I

### Violation of the Defend Trade Secrets Act (DTSA)
### (18 U.S.C. §§ 1836(b), 1839 *et seq.*)
### (Against All Defendants)

62.     Unisys incorporates and re-alleges every allegation above as if fully set forth herein.

63.     Unisys is the owner of certain confidential, valuable trade secrets contained in and relating to DWS, as previously discussed. These trade secrets,

which are not publicly disclosed, relate to Unisys' products and services that are used in or intended for use in interstate and foreign commerce. These confidential and proprietary trade secrets are of substantial economic value and have conferred a competitive advantage on Unisys, and Unisys has spent significant time and money developing such confidential information and trade secrets.

64.    At all times, Unisys has taken reasonable steps to maintain the secrecy of its trade secrets, including by requiring confidentiality agreements to be signed by any party granted access to Unisys' trade secrets.

65.    In the course of Atos Employee Defendants' employment, Unisys afforded Atos Employee Defendants access to and use of Unisys' confidential information and trade secrets which Atos Employee Defendants had a duty to maintain as confidential.  Atos Employee Defendants signed confidentiality agreements where they expressly acknowledged and confirmed the confidential nature of these secrets.

66.    As stated above, Unisys sells its solutions throughout the United States. The confidential information and trade secrets to which Defendants had access are related to Unisys' products and services that are used in, or intended for use in, interstate or foreign commerce.

67.    Atos Employee Defendants actually misappropriated Unisys' confidential information and trade secrets to benefit themselves and Atos, and to

allow Atos to unfairly compete against Unisys by using Unisys' trade secrets, including in this District. Misappropriation of this type of information undermines Unisys' competitive position in the highly competitive technology solutions industry. Further, at the time they left Unisys, Atos Employee Defendants possessed extensive confidential information which they have used and disclosed at Atos, and will inevitably continue use and disclose to Atos in the course of their employment.

68.    Defendants knew or should have known that Unisys' trade secrets (a) are confidential; (b) were acquired improperly from Unisys under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; (c) were developed or acquired by Unisys at great expense and effort; (d) are maintained as confidential and are not generally available to the public or Unisys' competitors; (e) would provide significant benefit to a competitor seeking to compete with Unisys; and (f) are critical to Unisys' ability to conduct its business successfully.

69.    Atos improperly acquired and participated in disclosure and use of Unisys' trade secrets when Gilbert disclosed confidential Unisys information to Atos executives as alleged above and further when Gilbert uploaded such information to Atos' OneDrive server for use in connection with and to benefit Gilbert's work at Atos to revitalize its dying DWP division. Further, in their new roles at Atos, Defendants have used and disclosed, and will continue to use and disclose, Unisys'

trade secrets within the course and scope of their employment at Atos. Defendants have benefited and will continue to benefit from that use including by continuing to design and implement Atos' worldwide business strategy for its DWP business with the benefit of Unisys' trade secrets.

70.    The Atos Employee Defendants are agents of Atos, and their misappropriation of Unisys' trade secrets occurred, and is occurring, during the course of and within the scope of their employment at Atos. Indeed, Atos hired the Atos Employee Defendants to join and revitalize its DWP division to compete against competitors like Unisys. The Atos Employee Defendants' improper actions, including transferring Unisys confidential and trade secret information to Atos' servers, and using such Unisys information in their DWP roles at Atos, occurred substantially within the temporal and spatial scope of their employment with Atos for the purpose of giving Atos an unfair advantage against Unisys in the digital workplace space. Atos is therefore at least vicariously liable for Atos Employee Defendants' misappropriation of Unisys trade secrets, in addition to being directly liable for its own improper acquisition, use, and disclosure of Unisys' trade secrets as alleged herein.

71.    At no time has Unisys consented to the Defendants' improper acquisition, disclosure, or use of Unisys' trade secrets for any reason unrelated to Atos Employee Defendants' employment with Unisys.

72.     As a direct and proximate result of Defendants' current and continued misappropriation of Unisys' trade secrets, Unisys has been damaged, including but not limited to the loss of goodwill and profits, and will suffer imminent and irreparable harm.

73.     Thus, Defendants have engaged in the actual and threatened misappropriation of Unisys' confidential information in violation of the DTSA.

74.     The actions of the Defendants were and continue to be intentional, willful, outrageous and malicious, justifying the imposition of injunctive relief and actual and exemplary damages to the extent permitted under the law.

75.     Unless enjoined by this Court, Defendants' acts of misappropriation will continue and Unisys will suffer irreparable harm.  Further, there is a genuine, imminent threat that Defendants will continue to disclose or use Unisys' trade secrets within Atos.  Unisys, therefore, lacks an adequate and complete remedy at law and is entitled to injunctive relief to prevent the threatened or actual misappropriation of Unisys' trade secrets under 18 U.S.C. § 1836(b)(3).

## COUNT II

### Violation of the Pennsylvania Uniform Trade Secrets Act (PUTSA) (12 Pa. C. S. § 5301 *et seq.*) (Against All Defendants)

76.     Unisys incorporates and re-alleges every allegation above as if fully set forth herein.

77.     In the course of Atos Employee Defendants' employment, Unisys afforded Atos Employee Defendants access to and use of Unisys' confidential information and trade secrets which Atos Employee Defendants had a duty to maintain as confidential.   Atos Employee Defendants signed confidentiality agreements where they expressly acknowledged and confirmed the confidential nature of these secrets.

78.     That information is kept confidential and is not publicly disclosed, and Unisys derives value from the confidentiality of such information.

79.     As alleged above, Atos Employee Defendants actually misappropriated Unisys' confidential information and trade secrets to benefit themselves and Atos, and to allow Atos to unfairly compete against Unisys by using Unisys' trade secrets, including in this District.  Misappropriation of this type of information undermines Unisys' competitive position in the highly competitive technology solutions industry.  Further, at the time they left Unisys, Atos Employee Defendants possessed extensive confidential information which they have used and disclosed at Atos and will inevitably continue use and disclose to Atos in the course of their employment.

80.     Defendants knew or should have known that Unisys' trade secrets (a) are confidential; (b) were acquired improperly from Unisys under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret; (c) were developed or acquired by Unisys at great expense and effort;

(d) are maintained as confidential and are not generally available to the public or Unisys' competitors; (e) would provide significant benefit to a competitor seeking to compete with Unisys; and (f) are critical to Unisys' ability to conduct its business successfully.

81.    Atos improperly acquired and participated in disclosure and use of Unisys' trade secrets when Gilbert disclosed confidential Unisys information to Atos executives as alleged above and further when Gilbert uploaded such information to Atos' OneDrive server for use in connection with and to benefit Gilbert's work at Atos to revitalize its dying DWP division.  Further, in their new roles at Atos, Defendants have used and disclosed, and will continue to use and disclose, Unisys' trade secrets within the course and scope of their employment at Atos.  Defendants have benefited and will continue to benefit from that use including by continuing to design and implement Atos' worldwide business strategy for its DWP business with the benefit of Unisys' trade secrets.

82.    The Atos Employee Defendants are agents of Atos, and their misappropriation of Unisys' trade secrets occurred, and is occurring, during the course of and within the scope of their employment at Atos.  Indeed, Atos hired the Atos Employee Defendants to join and revitalize its DWP division to compete against competitors like Unisys.  The Atos Employee Defendants' improper actions, including transferring Unisys confidential and trade secret information to Atos'

servers, and using such Unisys information in their DWP roles at Atos, occurred substantially within the temporal and spatial scope of their employment with Atos for the purpose of giving Atos an unfair advantage against Unisys in the digital workplace space.   Atos is therefore at least vicariously liable for Atos Employee Defendants' misappropriation of Unisys trade secrets, in addition to being directly liable for its own improper acquisition, use, and disclosure of Unisys' trade secrets as alleged herein.

83.   At no time has Unisys consented to the Defendants' improper acquisition, disclosure, or use of Unisys' trade secrets for any reason unrelated to Atos Employee Defendants' employment with Unisys.

84.   As a direct and proximate result of Defendants' misappropriation of Unisys' confidential information and trade secrets, Unisys has suffered and will continue to suffer substantial damages, including but not limited to the loss of goodwill and profits.

85.   Thus, Defendants have engaged in the actual or threatened misappropriation of Unisys' confidential information in violation of PUTSA.

86.   The actions of the Defendants were and continue to be intentional, willful, outrageous and malicious, justifying the imposition of injunctive relief and actual and exemplary damages to the extent permitted under the law.

87.     The threatened and actual injuries that Unisys has suffered or will suffer are immediate and irreparable.  Because of the difficulty in quantifying injury and harm to Unisys' ability to compete, acquire and maintain a competitive advantage through its confidential information and trade secrets and Defendants' wrongful acquisition, use, and disclosure of such information, monetary damages alone will not adequately compensate Unisys for Defendants' misappropriation of Unisys' confidential information and trade secrets and Defendants' inevitable disclosure of that confidential information and trade secrets.  Unisys, therefore, lacks an adequate and complete remedy at law and is entitled to injunctive relief to prevent the threatened or actual misappropriation of Unisys' trade secrets.

## COUNT III

### Breach of Contract
### (Against Defendants Gilbert and McGarvey)

88.     Unisys incorporates and re-alleges every allegation above as if fully set forth herein.

89.     Gilbert voluntarily entered the Proprietary Information/Non-Compete and Compensation Agreements with Unisys.  *See* Exs. 1, 3–10.

90.     McGarvey voluntarily entered the Proprietary Information/Non-Compete and Compensation Agreements with Unisys.  *See* Ex. 1.

91.     The Proprietary Information/Non-Compete and Compensation Agreements are valid, binding, and enforceable.

92.    The Proprietary Information/Non-Compete and Compensation Agreements are supported by adequate legal consideration.

93.    Unisys adequately performed as required under the Proprietary Information/Non-Compete and Compensation Agreements.

94.    Under the terms of the Proprietary Information/Non-Compete Agreement, Atos Employee Defendants agreed they will not "directly or indirectly during or after the term of [their] employment … transfer, or allow to be transferred, any information not generally known outside the Company or that is designated by the Company as 'Confidential' or 'Restricted Confidential' or is similarly designated, to any person, firm, or organization not authorized by the Company to receive it, or to use any such designated information other than for the sole benefit of the Company."  Exs. 1, 2.

95.    The Atos Employee Defendants' Compensation Agreements required that they "acknowledge [their] continuing obligations" under the Proprietary Information/Non-Compete Agreement.  Exs. 3–13.

96.    Under the terms of their Proprietary Information/Non-Compete Agreements, Atos Employee Defendants agreed to "not, during [their] employment at Unisys and for a period of one (1) year after the termination of [their] employment at Unisys, directly or indirectly" "solicit or attempt to influence any employee of Unisys to terminate his or her employment with Unisys."  *See* Exs. 1–2.  Atos

Employee Defendants also agreed not to "solicit or divert to any competing business any customer or prospective customer to which [they were] assigned during the eighteen (18) months prior to leaving Unisys." *See* Exs. 1–2.

97.    The Atos Employee Defendants' Compensation Agreements included similar prohibitions and required them to reaffirm the commitments made in the Proprietary Information/Non-Compete Agreements. *See* Exs. 3–13.

98.    Atos Employee Defendants materially breached the Proprietary Information/Non-Compete and Compensation Agreements by transferring or allowing to be transferred information not generally known outside Unisys and using such information other than for the sole benefit of Unisys, including by soliciting and/or diverting Unisys' clients with whom they had worked to Atos.

99.    Gilbert materially breached the Proprietary Information/Non-Compete and Compensation Agreements by soliciting Unisys' employees to work at Atos.

100.    As a proximate result of Atos Employee Defendants' actions, Unisys has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

101.    Unisys is entitled to damages, temporary, preliminary, and permanent injunctive relief against further breaches of the Proprietary Information/Non-Compete and Compensation Agreements.

## COUNT IV

### Tortious Interference with Contract
### (Against Defendant Atos)

102.    Unisys incorporates and re-alleges every allegation above as if fully set forth herein.

103.    Unisys had valid and binding contractual relationships with Atos Employee Defendants, namely the Proprietary Information/Non-Compete Agreements and the Compensation Agreements.  Under these contracts, Atos Employee Defendants have a continuing obligation not to retain Unisys confidential information and trade secrets, not to solicit or divert Unisys clients with whom they had worked during the eighteen months prior to leaving Unisys to a competing business at Atos, and not to solicit or attempt to influence any employees of Unisys to terminate his or her employment with Unisys for one year following the termination of their employment at Unisys.

104.    Atos was aware that Gilbert and McGarvey were subject to these Agreements, and that Gilbert and McGarvey had access to, and possession of, Unisys confidential information relating to DWS.

105.    Atos intended to harm Unisys by intentionally and without justification interfering with Unisys' contractual relationship with Atos Employee Defendants, including by recruiting and hiring them to positions that, on their face, violated

Gilbert and McGarvey's obligations under the Proprietary Information/Non-Compete Agreements and the Compensation Agreements they signed.

106.    Atos further encouraged and allowed the Atos Employee Defendants to violate their obligations under the Proprietary Information/Non-Compete Agreements and the Compensation Agreements via the Atos Employee Defendants' use of Unisys' trade secrets and confidential information in their roles at Atos.

107.    Further, Atos Employee Defendants both stole documents from Unisys containing Unisys' confidential and trade secret information, a direct violation of the obligations set forth in their Agreements and brought those documents with them to Atos.  Atos, with knowledge of that theft, has not taken any corrective action against the Atos Employee Defendants after the commencement of this lawsuit, thereby further interfering with Unisys' contractual relationship with Atos Employee Defendants and failing to mitigate the damage Unisys was, and is, incurring from Defendants' unlawful activities.

108.    Although Unisys is entitled to damages to compensate it for the harm it already has suffered, for the reasons set forth above, these damages will not provide an adequate remedy at law for Atos' future interference with Atos Employee Defendants' performance of their obligations under the Agreements.  Unisys is threatened with additional and ongoing injuries, including loss of profits, loss of market advantage, and loss of the inherent value of its trade secrets and confidential

information, unless Atos is enjoined and restrained by an order of this Court.  Unisys is entitled to an order requiring Atos to purge any Unisys confidential and trade secret information from its network, and enjoining Atos from employing Atos Employee Defendants in positions that violate their obligations under their Agreements.

## Jury Demand

109.   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Unisys demands a trial by jury on all issues so triable.

## Prayer for Relief

WHEREFORE, Unisys prays for relief as follows:

1.    Award a temporary restraining order, preliminary injunction, and/or permanent injunction prohibiting:

- Defendants from disclosing, retaining, or using any confidential or trade secret information of Unisys, including without limitation to others within Atos.

- Atos Employee Defendants from working at Atos (and each of their affiliates) in its DWS/DWP business for one year from the entry of judgment, or from soliciting or diverting any Unisys clients or prospective clients with whom they worked in the eighteen months prior to leaving Unisys to a competing business at Atos for one year from the entry of judgment.

- Atos Employee Defendants from soliciting any employee at Unisys to leave his or her employment at Unisys for one year from the entry of judgment.

2.     Award Unisys damages in an amount to be determined at trial, including without limitation, Unisys' lost revenues and profits, and any unjust enrichment, restitution, or disgorgement, plus a reasonable royalty to the extent permitted under the law.

3.     Award Unisys punitive damages in an amount to be determined at trial.

4.     Award Unisys pre-judgment and post-judgment interest.

5.     Award Unisys' attorneys' fees and costs.

6.     Award Unisys any other relief as the Court deems appropriate.

Dated: March 8, 2023

Respectfully submitted,

*/s/ Julian C. Williams*
Julian C. Williams (S.B.N. 324771)
julian.williams@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Phone: (215) 963-5000
Fax: (215) 963-5001

Robin Nunn (*pro hac vice*)
robin.nunn@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
Phone: (212) 309-6779
Fax: (212) 309-6001

Michael W. De Vries (*pro hac vice*)
michael.devries@kirkland.com
California S.B.N. 211001
Christopher M. Lawless (*pro hac vice*)
California S.B.N. 268952
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400

Adam R. Alper (*pro hac vice*)
adam.alper@kirkland.com
California S.B.N. 196836
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400

Gianni Cutri (*pro hac vice*)
gianni.cutri@kirkland.com
Illinois S.B.N. 6272109

KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000

Leslie M. Schmidt (*pro hac vice*)
New York S.B.N. 4884078
leslie.schmidt@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800

*Attorneys for Plaintiff*
Unisys Corporation