## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNISYS CORPORATION,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civ. No. 23-555** |
| | : | |
| **LEON GILBERT, *et al.*,** | : | |
| **Defendants.** | : | |

## O R D E R

Plaintiff Unisys Corporation seeks a Temporary Restraining Order to stop Defendants Leon Gilbert and Michael McGarvey from: (1) disclosing Unisys' confidential or trade secret information; (2) soliciting Unisys employees; and (3) working in Defendants Atos IT Solutions and Services, Inc.'s and Atos SE's Digital Workplace Services department.  (Doc. Nos. 4, 57.) Defendants oppose only the third request.  (Doc. Nos. 24, 62.)  Having allowed the Parties to take expedited discovery, I will grant that part of Unisys' Motion that is unopposed.  I will not at this time restrict Gilbert's and McGarvey's employment with Atos.

## I.    BACKGROUND

### A.    The Parties

Unisys provides "digital workplace solutions, cloud and infrastructure solutions, enterprise computing solutions and business process solutions" internationally.  (Compl., Doc. No. 1 ¶ 24.) Unisys has expended "hundreds of millions of dollars" to "transform" its DWS business and develop its "proprietary" DWS technologies and support services.  (Id. ¶ 26; Doc. No. 4-1 at 11.) The Company has taken steps to protect its confidential and proprietary information by requiring employees to sign a Confidentiality Policy, a Code of Ethics and Business Conduct, and an Employee Proprietary Information, Invention, and Non-Competition Agreement, and by storing

confidential and sensitive documents on private SharePoint sites.  (Compl. ¶¶ 30–35.)

Unisys hired Gilbert and McGarvey to lead its DWS business.  (Doc. No. 4-1 at 11.)  Before joining Unisys, Gilbert and McGarvey worked in DWS at Atos for some seven and ten years, respectively.  (Doc. No. 24 at 11–12; Gilbert Decl. (Doc. No. 24-2) ¶¶ 4, 9, 11; McGarvey Decl. (Doc. No. 24-3) ¶¶ 12–15.)  Atos IT Solutions and Services, Inc. is the American wholly owned Subsidiary of Atos SE, a French Company.  (Am. Compl., Doc. No. 61 ¶¶ 19–21.)  Atos offers comparable DWS products and services.  (Doc. No. 57 at 9.)

Gilbert was a member of Unisys' Executive Leadership Team and served as the Senior Vice President and General Manager of its DWS business from February 1, 2021, until his resignation on January 27, 2023.  (Compl. ¶ 14; Doc. No. 4-1 at 11.)  McGarvey worked closely with Gilbert to run the DWS business unit and served as Unisys' Vice President of Solutions Management from March 15, 2021 to February 5, 2023. (Compl. ¶ 15; Doc. No. 4-1 at 11.)  Gilbert and McGarvey had access to Unisys' confidential and proprietary business strategy and technical information.  (Compl. ¶ 48; Doc No. 4-1 at 13.)   Gilbert and McGarvey signed Employee Proprietary Information, Invention, and Non-Competition Agreements and Compensation Agreements, under which they agreed to keep company information confidential and not to solicit any Unisys employee away from Unisys.  (See, e.g., Compl. ¶¶ 32–33, 71–72, 76, 78; Doc. No. 1-3 ¶¶ 1(b), 1(d), 2, 6(a); Doc. No. 1-4 ¶¶ 1(b), 1(d), 2, 6(a); Doc. No. 4-11 ¶¶ 1(b), 1(d), 2, 6(a); Doc. No. 4-12 ¶¶ 1(b), 1(d), 2, 6(a); Doc. No. 1-5 at § 10.1–10.3; Doc. No. 1-14 at §§ 10.1–10.3; Doc. Nos. 4-13, 4-14 at §§ 10.1–10.3; Doc. Nos. 4-15, 4-16 at §§ 11.1–11.3; Doc. Nos. 4-17–4-23 at §§ 10.1–10.3.)  Significantly, the "Non-Competition" agreement they entered related only to the sharing of proprietary information.  Neither man was subject to a non-compete agreement restricting post-Unisys employment.

### B. Alleged Misappropriation and Solicitation

In December 2022, Atos CEO Nourdine Bihmane approached Gilbert about returning to the Company's competing DWS business.  (Gilbert Dep. (Doc No. 57-24) 251:6–14, 252:21–25.)  Gilbert downloaded "hundreds" of documents from Unisys' SharePoint system and transferred some 200 documents to his personal OneDrive.  (Doc. No. 57 at 10.)  When Gilbert joined Atos on January 30 of this year, he copied the Unisys documents from his personal OneDrive to his Atos OneDrive.  (Doc. No. 57 at 10–11.)  Gilbert acknowledges that the documents relate to Unisys' DWS business, contain confidential information, and information that Unisys would not want the Atos CEO to have.  (Doc. No. 57 at 11; Gilbert Dep. 127:10–116, 136:8–13, 146:5–11, 148:19–149:20.)  Gilbert attempted to delete the documents after Unisys filed its Complaint.  (Doc. No. 57 at 12.)  Because Atos "segregated" Gilbert from these documents, he has not had access to them since February 13, 2023.  (Doc. No. 62 at 16.)

While still at Unisys, Gilbert emailed Atos' HR head a list of three Unisys employees whom he wanted to bring to Atos.  (Doc. No. 57 at 13; Doc. No. 57-1 at 2.)  All three have since joined Atos.  (Doc. No. 57 at 13.)  These employees planned to lie to Unisys about the circumstances of their departure "to avoid potential legal issues around soliciting."  (Doc. No. 57 at 13; Gilbert Dep. 330:23–331:16, 334:21–336:3; Doc. No. 57-25 at 3.)  In January 2023, Gilbert also sent a WhatsApp message asking another Unisys executive to join him at Atos.  (Doc. No. 57 at 13–14; Doc. No. 56-10 at 2.)

On January 4 and 5, 2023, McGarvey downloaded some 13,000 Unisys files to his personal laptop, which he used for work at Unisys pursuant to Company policy.  (Compl. ¶¶ 9, 38; Doc. No. 62 at 9.)  McGarvey acknowledged that these documents contain confidential Unisys information.  (Doc. No. 57 at 14.)  McGarvey "explained" that he attempted to compile a smaller

subset of documents as part of a "transition package" for his successor.  Unisys notes, however, that McGarvey downloaded these documents *before* he announced his departure and *before* his successor was named.  (Doc. No. 57 at 14–15.)  Moreover, during discovery, Unisys could not find any transition folder that McGarvey purportedly created.  (Doc. No. 57 at 15.)  Disturbingly, McGarvey attempted to wipe his personal laptop on January 27, February 5, and February 14, 2023.  (Doc. No. 57 at 17.)  Unisys is concerned that before wiping his computer, McGarvey could have downloaded or transferred these files to a non-Unisys-controlled device or system.  Unisys' COO and CIO nonetheless testified that the Company has no evidence that McGarvey has done so.  (Doc. No. 62 at 14–15; Thomson Dep (Doc. No. 57-28) 99:19–25, 110:23–25, Marshall Dep. (Doc. No. 62-1) 89:12–22; Thomson Dep. (Doc. No. 62-5) 57:15–58:23.)  The Parties agree that at least some of the documents taken by Gilbert and McGarvey contain Unisys' confidential and proprietary information.  (See, e.g., Doc. No. 87 at 2–3.)

On January 9, 2023, Gilbert and McGarvey announced that they were leaving Unisys for Atos.  (Compl. ¶ 9.)  The same day, despite knowing that Gilbert was returning to Atos, Unisys COO Michael Thomson invited Gilbert to a leadership meeting in Dallas where Unisys' DWS plans were discussed.  (Doc. No. 62 at 19; Thomson Dep. (Doc. No. 62-5) 143:3–18.)  Thomson testified at deposition that that the leadership group had limited time together in Dallas, and that he invited Gilbert in part to avoid any "distraction" Gilbert's absence might cause.  (Thomson Dep. (Doc. No. 62-5) 143:16–25.)

Remarkably, upon examination by Defendants' counsel, Thomson testified at deposition that if Gilbert and McGarvey did not have access to the stolen documents, he did not know how "something in [Gilbert's] memory would be construed as preventing him from doing his job at Atos," and that "anything in [McGarvey's] head is used how he determines to use it and should

not prevent him from obtaining gainful employment." (Thomson Dep. (Doc. No. 62-5) 132:6:133:4.) In an apparent effort to ameliorate this less than helpful testimony, Unisys' counsel then elicited from Thomson testimony that Gilbert and McGarvey would have committed to memory "[c]ertainly some of" Unisys' trade secrets and that their knowledge and use of these trade secrets at Atos could harm Unisys because it could put Unisys at a "competitive disadvantage," "could cause [Unisys] to lose clients . . . [and] prospective clients" and "could take away [Unisys'] differentiation in the marketplace." (Thomson Dep. (Doc. No. 57-28) 198:3–199:6.)

## B. PROCEDURAL HISTORY

On February 13, 2023, Unisys filed a Complaint and a Motion for Temporary Restraining Order. (Doc. Nos. 1, 4.) Plaintiff alleges that Gilbert and McGarvey engaged in actual and threatened misappropriation of Unisys' confidential information in violation of the Defend Trade Secrets Act and Pennsylvania Uniform Trade Secrets Act, and breached their Proprietary Information/Non-Compete and Compensation Agreements. (Compl. ¶¶ 51–83); 18 U.S.C. § 1836(b) et seq.; 12 Pa. C.S. § 5301 et seq.

On February 21, I ordered expedited discovery. (Doc. No. 29.) Upon completion of that discovery, Unisys filed an Amended Application for a Temporary Restraining Order, to which Defendants responded. (Doc. Nos. 56, 57, 59, 62.) The same day, Unisys filed an Amended Complaint, adding Atos SE and Atos IT Solutions and Services, Inc., as Defendants, and bringing an additional Count of Tortious Interference against them. (See Am. Compl., Doc. No. 61.)

On March 13, I ordered Unisys to provide for *in camera* review all documents shared by Gilbert and McGarvey that Unisys beleives contain confidential or trade secret information. (Doc. No. 67.) Once Unisys complied, I ordered Defendants to respond and explain whether the documents contained Unisys' confidential or proprietary information. (Doc. Nos. 68–69.)

Defendants' less than candid responses to my March 15 Order compelled me to order the Parties to engage in a document-by-document review and then articulate whether Defendants misused or misappropriated a document, and whether the document contains Unisys' confidential and propriety information.  (Doc. Nos. 74, 75, 78.)  On March 21, the Parties submitted reports articulating their positions on the documents.  (Doc. Nos. 85, 87, 88.)

On April 3, 2023, I ordered additional briefing respecting Unisys' claims of imminent, irreparable harm, in light of its COO's testimony that Gilbert's and McGarvey's knowledge of the Company's confidential and proprietary information should not prevent them from continuing to work at Atos.  (Doc. Nos. 95, 97, 100, 102.)

Finally, by Court Order, the Parties hired a forensic examiner to continue to investigate Defendants' alleged document theft.  (See Doc. Nos. 81, 82.)

### C.  LEGAL STANDARDS

Rule 65 authorizes me to issue injunctive relief.  See Fed. R. Civ. P. 65(b).  "The standards for a temporary restraining order are the same as those for a preliminary injunction."  Bieros v. Nicola, 857 F. Supp. 445, 446 (E.D. Pa. 1994).

A TRO "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."  Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Fed. Prac. & Proc. § 2948 (2d ed. 1995)).  "The power to issue an injunction should be used sparingly, and relief should not be granted except in rare instances in which the law, the facts, and equities are clearly in the moving party's favor."  Sovereign Order of St. John of Jerusalem-Knights of Malta by Coleman v. Messineo, 572 F. Supp. 983, 988 (E.D. Pa. 1983).

In deciding whether to grant a TRO, I must consider:  (1) Unisys' likelihood of success on

the merits; (2) whether Unisys will suffer irreparable harm if the injunction is denied; (3) whether granting relief will result in greater harm to Gilbert and McGarvey; and (4) whether an injunction is in the public interest.  See Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 119 (3d Cir. 2010).

### D.  DISCUSSION

Because Gilbert and McGarvey consent to being enjoined from "disclosing, retaining, or using any confidential or trade secret information of Unisys," or from soliciting any additional Unisys employees.  (Doc. No. 24 at 8–9; Doc. No. 57 at 7.)  I will grant this injunctive relief as unopposed.

Unisys also urges me to enjoin Gilbert and McGarvey from working in Atos' DWS business.  Unisys argues that Gilbert's and McGarvey's misappropriation of the Company's confidential and proprietary documents and breaches of their Proprietary Information/Non-Compete and Compensation Agreements will irreparably harm Unisys by causing Unisys to lose "unrecoverable market share and customers" and "its head start in the market."  (Doc. No. 57 at 28–29.)  I disagree.

To establish irreparable harm, Unisys must make "a 'clear showing of *immediate irreparable* injury' . . . or 'a presently existing actual threat; (an injunction) may not be used simply to eliminate a possibility of a remote future injury.'"  Continental Grp., Inc. v. Amoco Chemicals Corp., 614 F.2d 351, 359 (3d Cir. 1980) (quoting Ammond v. McGahn, 532 F.2d 325, 329 (3d Cir. 1976) and Holiday Inns of Am., Inc. v. B & B Corp., 409 F.2d 614, 618 (3d Cir. 1969)) (emphasis added).

"[I]rreparable harm is a 'critical' and 'threshold' factor, without which a preliminary injunction cannot be granted."  All. Life Scis. Consulting Grp., Inc. v. Fabriczi, No. CV 17-864-

CDJ, 2017 WL 4212311 (E.D. Pa. Aug. 17, 2017) (citing Reilly v. City of Harrisburg, 858 F.3d 173, 179 (3d Cir. 2017)), report and recommendation adopted, No. CV 17-0864, 2017 WL 4182822 (E.D. Pa. Sept. 21, 2017). "[S]ince the purpose of a preliminary injunction is to deter, not to punish, any irreparable harm alleged by [Unisys] must be prospective." First Health Grp. Corp. v. Nat'l Prescription Adm'rs, Inc., 155 F. Supp. 2d 194, 235 (M.D. Pa. 2001) (citing Hecht Co. v. Bowles, 321 U.S. 321, 329 (1944)). "Establishing a risk of irreparable harm is not enough. [Unisys] has the burden of proving a 'clear showing if immediate irreparable injury.'" Hoxworth v. Blinder, Robinson & Co., Inc., 903 F.2d 186, 205 (3d Cir. 1990). It must be an "imminent injury such that legal or equitable relief at the end of trial will not remedy the harm." Bioquell, Inc. v. Feinstein, No. CIV. A. 10-2205, 2011 WL 673746, at *8 (E.D. Pa. Feb. 16, 2011) (citing Acierno v. New Castle Cnty., 40 F.3d 645, 653 (3d Cir. 1994)). "The preliminary injunction must be the only way of protecting the plaintiff from harm." Instant Air Freight C. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989).

Unisys has failed to make a clear showing of imminent or irreparable harm. See Reilly, 858 F.3d at 179. It appears that Gilbert and McGarvey misappropriated confidential Unisys documents and violated—or at least attempted to violate—their Proprietary Information/Non-Compete and Compensation Agreements. Gilbert transferred 200 Unisys documents to his Atos OneDrive, and Gilbert downloaded some 13,000 Unisys documents to his personal laptop before his departure from Unisys. Moreover, Gilbert solicited three employees to leave their employment at Unisys, and all three have since joined Atos. Unisys has not shown, however, that Gilbert and McGarvey presently pos a threat of imminent, irreparable harm. Expedited discovery has revealed that Gilbert has been sequestered from the 200 documents he transferred to his Atos OneDrive account, and neither he nor any other Atos employee has accessed the documents. Expedited

discovery has further revealed that McGarvey wiped his personal computer, and Unisys has not established that he transferred the documents to a non-Unisys device before doing so, or that McGarvey or Atos currently have access to these documents.  Accordingly, Gilbert and McGarvey cannot disclose, use, or rely on the Unisys documents in their work at Atos.  Cf Ecosave Auto., Inc. v. Delaware Valley Auto., LLC, 540 F. Supp. 3d 491, 502 n1 (E.D. Pa. 2021).  Once again, the Parties have retained a forensic examiner, and if his investigation shows that the facts are otherwise, I shall revisit Unisys' claims for injunctive relief.  Otherwise, such harm is in the past. See ADP, Inc. v. Levin, No. 21-2187, 2022 WL 1184202 (3d Cir. Apr. 21, 2022) ("[T]he purpose of a preliminary injunction is to 'protect [] the plaintiff from harm' going forward.") (quoting Siemens USA Holdings Inc. v. Geisenberger, 17 F.4th 393, 408 (3d Cir. 2021)).

Thomson's deposition testimony strongly suggests that Gilbert and McGarvey's use of their knowledge of Unisys' DWS business in their employment at Atos will not harm Unisys irreparably.  To the contrary, Thomson testified that he did not know how anything in Gilbert of McGarvey's memories could "be construed as preventing [them] from doing [their] job[s] at Atos." (Thomson Dep. (Doc. No. 62-5) at 132:6:133:4.)  Counsel's efforts to rehabilitate Thomson are at best weak.  Yet, Unisys must make a clear showing of immediate, irreparable harm to secure a TRO.  See Hoxworth, 903 F.2d at 205.  That Thomson invited Gilbert to a high-level Unisys meeting—at which confidential Company information was discussed—*after* learning that Gilbert was departing Unisys for Atos weakens Unisys' claim further.  (Doc. No. 62 at 19; Thomson Dep. (Doc. No. 62-5) 143:3–18.)  The words and actions of Unisys' top level management belie its claim of irreparable harm.

Finally, although Unisys required Gilbert and McGarvey to sign Proprietary Information/Non-Compete and Compensation Agreements, these dealt only with disclosure of

confidential information; they did not prohibit either man from working for a competitor. Unisys nonetheless urges that because the Unisys information Gilbert and McGarvey possess is so valuable, the non-disclosure agreements they signed necessarily preclude them from working for a competitor. This is dubious. If Unisys waned to limit the ability of Gilbert and McGarvey to work for a competitor, the Company could have required an appropriate non-compete. Thomson's seeming reluctance to limit their post Unisys employment confirms this reading of the non-disclosure agreements.

### E.  CONCLUSION

As I have discussed, because Gilbert and McGarvey consent to a TRO preventing them from using Unisys' confidential and proprietary information, and because the Defendants admit that at least a portion of the documents taken by Gilbert and McGarvey contain Unisys' confidential information, I will enjoin them from using Unisys documents in their employment with Atos, which shall return, remove and/or delete any Unisys documents transferred to the Company by Gilbert and McGarvey. I shall also enjoin Gilbert and McGarvey from soliciting any additional Unisys employees—something they apparently do not contest. I will not take the additional step of enjoining Gilbert and McGarvey's continued employment with Atos, however, because Unisys has failed to make a clear showing of immediate, irreparable harm. See Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir. 1992). Rather, at this stage, Unisys has shown, at most, that Gilbert and McGarvey misappropriated Unisys' documents and violated the terms of their Proprietary Information/Non-Compete and Compensation and Non-Solicitation Agreements. Assuming these allegations are proven, this harm can be addressed and remedied after the completion of merits discovery. If the Parties' forensic audit reveals that Gilbert and McGarvey have shared confidential information with anyone at Atos or that Atos is using such

information, I am prepared to revisit this ruling.

$$*\qquad\qquad *\qquad\qquad *$$

**AND NOW**, this 12th day of April, 2023, it is hereby **ORDERED** that Plaintiff's Motion for a Temporary Restraining Order (Doc. No. 4) is **GRANTED** as follows:

1. Gilbert and McGarvey are enjoined from:

    a. disclosing, retaining, or using any of Unisys' confidential, proprietary or trade secret information; and

    b. soliciting other employees to leave their employment at Unisys.

2. Atos shall remove, return, and/or destroy all Unisys-related documents, files, and/or materials transferred to Atos by Gilbert.

For the present, Gilbert and McGarvey may continue to work at Atos.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
_____
Paul S. Diamond, J.
